```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-27-12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
COMMISSIONS IMPORT EXPORT S.A.,      :
                                     :
                    Plaintiff,       :
                                     :
    -against-                        :    No. 11 Civ. 6176 (JFK)
                                     :    **Opinion & Order**
THE REPUBLIC OF THE CONGO and        :
CAISSE CONGOLAISE D'AMORTISSEMENT,   :
                                     :
                    Defendants.      :
------------------------------------X

APPEARANCES:

    For Plaintiff:
    Owen C. Pell, Esq.
    Peter E. Wilhelm, Esq.
    WHITE & CASE LLP

    For Defendants:
    Boaz S. Morag, Esq.
    CLEARY GOTTLIEB STEEN & HAMILTON LLP

**JOHN F. KEENAN, United States District Judge**:

    Before the Court is the Republic of the Congo ("the Congo") and Caisse Congolaise D'Amortissement's ("CCA") motion to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for lack of venue or, in the alternative, to transfer this case to the United States District Court for the District of Columbia.  For the reasons that follow, the motion to transfer is granted.

## I.    Background

    Plaintiff Commissions Import Export S.A. ("Commisimpex" or "Plaintiff") is a company organized under the laws of the Congo.

1

(Compl. ¶ 4).  The Congo is a sovereign state, and CCA is a department of the Congo's Ministry of Economy, Finance, and Planning that is tasked with managing the country's debts.  (Id. ¶ 5).  In a complaint dated September 2, 2011, Commisimpex seeks recognition of a 2009 default money judgment rendered against the Congo and CCA (collectively, "Defendants") by the High Court of Justice, Queens Bench Division, Commercial Court in London (the "English judgment").  (Id. ¶ 1).

The facts giving rise to the English judgment are straightforward.  In the early 1990s, the Congo and CCA issued a series of promissory notes to Commisimpex for certain work and supply contracts.  (Id. ¶ 8; Ex. A § I.1).  These promissory notes were executed by the parties in Brazzaville, the Congo, (Compl. Ex. A § I.1), and contained an arbitration clause specifying that any dispute arising in connection with the notes be arbitrated in the International Court of Arbitration of the International Chamber of Commerce ("ICC") in Paris, France in accordance with French law.  (Id. § I.2).  When the Congo and CCA failed to repay the promissory notes, Commisimpex sought arbitration in the ICC, as provided in the parties' agreement.  (Id.).  In December 2000, the ICC issued a final arbitral award against the Congo and CCA holding them jointly and severally liable to Commisimpex for €4,094,531, £18,903,708, $31,184,837, and 1,731,267,415 Communauté Financière Africaine Francs, plus

penalty interest and arbitration costs. (Compl. ¶¶ 9-11; Ex. A). Commisimpex alleges that the Congo and CCA failed to pay the amount due and owing under the ICC arbitral award. (Compl. ¶ 12).

Eight and one half years later, Commisimpex commenced a proceeding in the High Court of Justice, Queens Bench Division, Commercial Court in London against the Congo and CCA for nonpayment of the ICC award. (Id. ¶ 13). The Congo and CCA failed to appear in the nonpayment proceeding, and in July 2009, the English Court issued a default judgment in favor of Commisimpex for €4,094,531, £18,903,708, $31,184,837, and 1,731,267,415 Communauté Financière Africaine Francs, plus penalty interest, arbitration costs, and court costs. (Id. ¶ 15; Ex. B). Again, Commisimpex alleges that the Congo and CCA failed to pay the English judgment. (Compl. ¶ 18). Commisimpex now seeks recognition of the English judgment in this Court pursuant to the Foreign Sovereign Immunities Act and the New York Uniform Foreign Country Money Judgments Recognition Act (the "Recognition Act").

**II.   Discussion**

**A.   Venue**

As this is a civil action against two Congolese state Defendants, the applicable venue provision is 28 U.S.C. §

1391(f), which provides in relevant part that venue will lie "in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" or in the United States District Court for the District of Columbia.  28 U.S.C. § 1391(f)(1), (4).  The sole venue allegation in the complaint is that "[v]enue is proper under 28 U.S.C. § 1391(f) as Defendants owe debts subject to attachment in this District."  (Compl. ¶ 7).  However, in its opposition brief, Plaintiff notes that it is a "matter of public record that the Congo does owe money here, is using a bank in this District to service dollar-denominated bonds [due in 2029 and unrelated to the 1990 promissory notes], and the bond prospectus makes clear that deposits will be maintained in this District."  (Pl. Mem. at 4).

With respect to the first prong of § 1391(f)(1), which provides for venue anywhere "a substantial part of the events or omissions giving rise to the claim occurred," the Second Circuit has explained that "for venue to be proper, <u>significant</u> events or omissions <u>material</u> to the plaintiff's claim must have occurred in the district in question." <u>Gulf Ins. Co. v. Glasbrenner</u>, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original) (interpreting 28 U.S.C. § 1391(b)(2), which is textually identical to § 1391(f)(1)).  Using what can only be

4

intentionally simplistic reasoning, Plaintiff maintains that since this is an action ultimately seeking to enforce a money judgment, the "claim" is for Congolese property to satisfy the English judgment and the "event" giving rise to that claim is the existence of Congolese property in this District. However, at oral argument, counsel acknowledged that Plaintiff's claim is brought pursuant to the Recognition Act and is appropriately characterized as a judgment recognition action since Plaintiff is seeking, but has not yet obtained, a U.S. judgment to enforce against any Congolese assets in this District. At this stage, Plaintiff's claim is for recognition of the English judgment, and the events giving rise to that judgment are: (1) the execution of promissory notes between a Congolese company and the Congolese government, which occurred in the Congo; (2) the arbitration award, which was entered in Paris; and (3) the English judgment itself, which was entered in London. None of the events "giving rise" to Plaintiff's judgment recognition claim, much less significant events material to Plaintiff's claim, occurred in the United States, and certainly not in this District.

   The second prong of § 1391(f)(1) provides for venue anywhere "a substantial part of property that is the subject of the action is situated." Neither party cites any caselaw directly interpreting this part of the venue statute, much less

in the context of judgment recognition and enforcement. Instead, Plaintiff argues that venue will lie because its effort to enforce the English judgment against Congolese debt in this District is an action seeking adjudication of the rightful ownership of Congolese property, thus any Congolese property in this District is the subject of the lawsuit. This position is both legally and factually untenable. Plaintiff advocates an extremely broad construction of § 1391(f)(1) whereby the statute would confer venue anywhere <u>any</u> asset of a defendant, even a fungible asset such as cash, is located. However, the statute is clear that the property establishing venue must be "the subject of the action." To give § 1391(f)(1) Plaintiff's interpretation would be to write this crucial modifying phrase out of the statute. A more reasonable interpretation would be that the property prong of § 1391(f)(1) governs venue in <u>in rem</u> actions concerning a specific and identifiable piece of property.

Indeed, even those cases Plaintiff does cite in support of its position support the Court's more measured statutory construction. In <u>Detroit International Bridge Company v. Government of Canada</u>, 787 F. Supp. 2d 47 (D.D.C. 2011), the plaintiff owners of a bridge spanning from Michigan to Canada filed suit against the government of Canada and U.S. defendants for their purported frustration of the plaintiffs' attempts to

expand the bridge.  Id. at 49-50.  Defendants made a motion to transfer venue to the Eastern District of Michigan, the U.S. location of the bridge; the court denied the motion to transfer, noting that "Plaintiffs' claims against Canada allege violations of treaty, statute, and contract . . . .  [T]he claims do not seek to adjudicate title, obtain possession of a particular piece of property, or vindicate interests in real property in a manner that would make the Eastern District of Michigan a proper venue for suit against Canada under [the property prong of] 28 U.S.C. § 1391(f)(1)."  Id. at 50.  In Kalamazoo Spice Extraction Co. v. Provisional Military Government of Socialist Ethiopia, 616 F. Supp. 660 (W.D. Mich. 1985), the plaintiff brought an action for damages against the government of Ethiopia in relation to its expropriation of a portion of Kalamazoo's ownership interest in the Ethiopian Spice Extraction Share Company ("ESESC").  This action was characterized as effectively a counterclaim to a prior action filed by ESESC against Kalamazoo to collect on accounts receivable owed to it by Kalamazoo in Michigan.  Id. at 661-62.  The court found venue in Michigan to be proper based on the presence of the accounts receivable – the subject of the original ESESC claim – in the district.  Thus, unlike the unrelated bond debt Plaintiff seeks to attach in this case, the accounts receivable in Kalamazoo were:  (1) assets; and (2) the same assets that formed the basis

of the plaintiff's claim.  Cf. Isbrandtsen Marine Servs., Inc. v. Shanghai Hai Xing Shipping Co., Ltd., No. 90 Civ. 1237, 1991 WL 211293, at *3 (D. Or. Apr. 1, 1991) (noting that although none of the events or omissions giving rise to plaintiff's maritime lien claim occurred in Oregon, venue for the claim, which "proceeds as if it were an action in rem" would lie under 28 U.S.C. § 1391(f)(1) because of the vessel's presence in the District of Oregon).

Even if any Congolese assets could constitute "a substantial part of property that is the subject of the action," Plaintiff has not sufficiently alleged that such assets exist in the Southern District of New York.  Theodore Ikemo, the Director General of CCA, affirms that neither the Congo nor CCA maintain any bank accounts in New York for the purpose of making payments on its bond debt or for other commercial transactions. (Corrected Ikemo Decl. ¶ 7).  Instead, in order to service its debt, the Congo

> periodically transfers the funds which are then used to make scheduled interest and principal payments to the Bondholders to HSBC UK, but the accountholder of the account at HSBC UK is in fact HSBC USA as the trustee paying agent. . . . [T]he transfer of funds from the Republic to an account of HSBC USA at HSBC UK occurs outside the United States from assets of the Republic that do not originate from, are not located in, and are not remitted by the Republic to an account of HSBC USA in the United States.  All such funds transferred from the Republic to HSBC USA as the trustee paying agent are held in trust by it for the benefit of the Bondholders.  The Republic has no legal

8

>     interest in such funds once they have been transferred
>     to the trustee paying agent.  HSBC USA is the
>     fiduciary of the Bondholders and is not the agent of
>     the Republic.

(Id. ¶ 5).  In response, Plaintiff references an Information Memorandum for certain dollar-denominated bonds due in 2029 which provides that any funds "unclaimed [by the Congo's bondholders] for five years after the date upon which such principal or interest shall have become due and payable shall be repaid to the Republic."  (Wilhelm Aff., Ex. A at A-7).  Plaintiff additionally relies on EM Ltd. v. Republic of Argentina, No. 03 Civ. 2507, 2009 WL 2568433 (S.D.N.Y. Aug. 18, 2009) for the proposition that funds used to service the 2029 bonds are attachable assets.  However, the Information Memorandum itself makes clear that the existence of any Congolese property in the Southern District of New York is purely speculative.  Thus, even if the Court accepted that unclaimed payments exist and could form the basis of venue under § 1391(f)(1), those payments in no event would revert back to the Congo before 2012 – five years after the bonds were issued in 2007.  Plaintiff's complaint was filed in September 2011, at which point in time there could not have been any unclaimed bond payments to attach.  Moreover, Mr. Ikemo states that Defendants have "never requested that any unclaimed funds be returned to it in the United States and has no plans to request to receive

9

unclaimed funds, if any, in the United States." (Corrected Ikemo Decl. ¶ 6). Plaintiff cannot assert venue on the property prong of § 1391(f)(1).

Separate and apart from the bases for venue laid out in § 1391(f), Plaintiff argues that the Congo engages in unrelated conduct which should submit Defendants to venue in this District. First, citing Kensington International Limited v. Société Nationale Des Pétroles Du Congo, No. 05 Civ. 5101, 2006 WL 846351, at *1 (S.D.N.Y. Mar. 31, 2006), Plaintiff points out that the Congo engages in financial transactions in the Southern District of New York relating to its national oil business. However, there is no indication that the promissory notes, arbitration award, or English judgment at the heart of this dispute relate to the Congo's national oil business or the U.S. financial transactions at issue in Kensington. Plaintiff seems to be conflating the venue requirements of § 1391(f) with due process minimum contacts requirements, but the two are not the same. Indeed, "[i]t would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." Gulf Ins. Co., 417 F.3d at 357.

Next, Plaintiff argues that venue in the Southern District of New York is proper because the Congo has implicitly consented to venue in this District in unrelated cases. Defendants point

10

out that in prior cases, the Congo either consented in an underlying loan agreement to jurisdiction and venue in the courts of the City of New York or had no basis to challenge venue.  See, e.g., Kensington Int'l Ltd. v. Republic of Congo, No. 03 Civ. 4578, 2007 WL 1032269, at *1 (S.D.N.Y. Mar. 30, 2007) (written consent to venue); Gray v. Permanent Mission of People's Republic of the Congo to the United Nations, 443 F. Supp. 816, 817 (S.D.N.Y. 1978) (venue was proper where plaintiff asserted claim against the Congo's mission to the United Nations, which is located in New York, in relation to real property in New York).  Neither of those factors is present in this case.  More importantly, however, prior consent to venue is irrelevant to the § 1391(f)(1) analysis in the case at bar and in no way demonstrates that the events giving rise to the instant action occurred in the Southern District or that the property involved in the instant action can be found in the Southern District.

### B.  Venue Transfer

Under 28 U.S.C. § 1406(a), where a case is filed in an improper district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice."  Daniel v. Am. Bd.

of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005).  While "[a] 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum," id., other factors may weigh in favor of transfer.  For example, courts have considered the merit and gravity of plaintiff's claims, see Henneghan v. Smith, No. 09 Civ. 7381, 2011 WL 609875, at *4 (S.D.N.Y. Feb. 17, 2011), as well as "the ultimate goal of the 'expeditious and orderly adjudication of cases and controversies on their merits'" when deciding to transfer venue in lieu of dismissal. Morath v. Metro. Recovery Servs., Inc., No. 07 Civ. 11081, 2008 WL 954154, at *1 (S.D.N.Y. Apr. 8, 2008) (quoting Goldlawr, Inc. v. Heinman, 369 U.S. 463, 466-67 (1962)).

    Defendants acknowledge that venue is proper in the District of Columbia, but weakly protest that Plaintiff should be forced to forfeit the effort and expense spent filing and serving this complaint and start anew.  Although there appears to be no statute of limitations bar preventing Plaintiff from refiling, the Court cannot ignore the fact that Defendants have defaulted on an enormous debt and have forced Plaintiff to chase them all over the world in an increasingly desperate attempt to collect. Moreover, "the Congo is an oil-rich nation with more than sufficient assets to pay its debts but one of the world's most notorious debtors," a country that "has repeatedly refused to

12

honor court judgments, not only the judgments entered in London, but judgments entered in New York courts as well." <u>Kensington Int'l Ltd. v. Republic of Congo</u>, No. 03 Civ. 4578, 2005 WL 646086, at *2 (S.D.N.Y. Mar. 21, 2005).  Dismissing the complaint and requiring Plaintiff to refile and re-serve an identical complaint achieves nothing but delay.  Therefore, the Court finds that the interest of justice is best served by transferring this case to the United States District Court for the District of Columbia.

### C.   Waiver of Sovereign Immunity

Plaintiff additionally argues that Defendants have explicitly and implicitly waived any applicable sovereign immunity defense by moving to dismiss pursuant to Rule 12(b)(3) without raising the issue and by failing to reserve its right to assert the defense in a stipulation extending time to answer or otherwise move against the complaint.  As the Southern District of New York is not the proper forum for this case, the Court declines to reach the question of a waiver of sovereign immunity, and entrusts it to the sound judgment of the Court in the District of Columbia that proceeds with the case on the merits.

## III. Conclusion

The Clerk of Court is directed to transfer this action to the United States District Court for the District of Columbia.

**SO ORDERED.**

Dated:   New York, New York
         April 27, 2012

                                        /s/ John F. Keenan
                                        John F. Keenan
                                        United States District Judge