**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| COMMISSIONS IMPORT EXPORT, S.A., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *v.* | ) | Civil Action No. |
| | ) | 1:12-CV-000743-ABJ |
| THE REPUBLIC OF THE CONGO AND | ) | |
| CAISSE CONGOLAISE D'AMORTISSEMENT, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**COMMISSIONS IMPORT EXPORT, S.A.'S**
**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**WHITE & CASE** LLP

Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Jonathan C. Ulrich (D.C. Bar No. 500832)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for Commissions Import Export, S.A.*

July 30, 2012

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................2

I.  THE ENGLISH JUDGMENT ENFORCING THE ARBITRAL AWARD MUST
    BE RECOGNIZED AND ENFORCED AS A MATTER OF LAW ..................................2

    A.  Summary Judgment Standard .......................................................................2

    B.  The English Judgment Is Enforceable As A Matter Of Law Under The
        D.C. Uniform Foreign-Country Money Judgments Recognition Act.....................3

    C.  Additional Interest And Costs Should Also Be Awarded As A Matter Of
        Law ...............................................................................................................5

II. DEFENDANTS ARE NOT IMMUNE FROM THIS ENFORCEMENT ACTION...........6

    A.  Defendants Explicitly And Repeatedly Waived Immunity From Any Legal
        Proceedings, Including Enforcement Actions, Relating To The Payments
        At Issue .........................................................................................................7

    B.  Defendants Are Not Immune Because This Action Involves A Confirmed
        Foreign Arbitral Award.................................................................................12

    C.  Defendants Are Not Immune Under The Commercial Activities Exception
        To The FSIA ................................................................................................15

CONCLUSION.....................................................................................................17

### TABLE OF AUTHORITIES

Federal Cases                                                                    Page(s)

*Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) .......................6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................2

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*,
    875 F.2d 1174 (5th Cir. 1989) ...............................................................8

*British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869 (9th Cir. 1974) .........5

*Compagnie des Bauxites de Guinee v. Hammermills, Inc.*, 1992 WL 122712
    (D.D.C. May 29, 1992) ............................................................................5

*Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
    800 F. Supp. 2d 161 (D.D.C. 2011) ...............................................3, 5, 13

*Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118 (D.C. Cir. 1999) ..................11, 12, 13

*Delta Foods Ltd. v. Rep. of Ghana*, 265 F.3d 1068 (D.C. Cir. 2001) ............................3

*Foremost-McKesson, Inc. v. The Islamic Rep. of Iran*, 905 F.2d 438
    (D.C. Cir. 1990) .....................................................................................15

* *Gulf Resources Am., Inc. v. Rep. of the Congo*, 370 F.3d 65 (D.C. Cir. 2004) ......6, 7, 8, 9, 11, 12

*Haynsworth v. The Corporation*, 121 F.3d 956 (5th Cir. 1997) ....................................5

*Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006) ......................................................2

*Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033 (D.C. Cir. 2003) ......................2

*La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*,
    533 F.3d 837  (D.C. Cir. 2008) .............................................................6, 13

*Nat'l Union Fire Ins. Co. of Pittsburgh v. People's Rep. of the Congo*,
    729 F. Supp. 936 (S.D.N.Y. 1989) .......................................................3, 5, 10

*Phoenix Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36 (D.C. Cir. 2000) ...................6

*Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*,
    760 F.2d 390 (2d Cir. 1985) .......................................................................8

*Rep. of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ....................................15, 16

*Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992) .............5

* *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex*
    *Centrala Navala*, 989 F.2d 572 (2d Cir. 1993)....................................13, 14, 15

*Servaas Inc. v. Rep. of Iraq*, 2011 WL 454501 (2d Cir. Feb. 16, 2011) .......................................16

*Society of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000) ...........................................................5

\* *Society of Lloyd's v. Siemon-Netto*, 457 F.3d 94 (D.C. Cir. 2006) ...............................................2, 5

*Society of Lloyd's v. Turner*, 303 F.3d 325 (5th Cir. 2002) ..............................................................5

*Termio S.A. E.S.P. v. Electranta S.P.,* 487 F.3d 928 (D.C. Cir. 2007) ...................................2, 13

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*,
   204 F.3d 384 (2d Cir. 2000) ..................................................................................................14, 15

\* *Walker Int'l Holdings Ltd. v. Rep. of Congo*, 395 F.3d 229 (5th Cir. 2004) ..........................8, 11

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154
   (D.C. Cir. 2002) .................................................................................................................7, 8, 10

Federal Statutes

9 U.S.C. §§ 201 *et seq.* ..............................................................................................................7, 13

9 U.S.C. § 207 .........................................................................................................................13, 14

28 U.S.C. § 1330 ...........................................................................................................................6

28 U.S.C. §§ 1602 *et seq.* ..............................................................................................................2

28 U.S.C. § 1603 ...........................................................................................................................6

28 U.S.C. § 1605 ..............................................................................................7, 12-13, 14, 15

Fed. R. Civ. P. 54 ........................................................................................................................6

Fed. R. Civ. P. 56 ....................................................................................................................1, 2

D.C. Statutes

D.C. Code § 15-108 .................................................................................................................5, 6

D.C. Code §§ 15-361 *et seq.* .........................................................................................................2

D.C. Code § 15-363 .................................................................................................................3, 4

D.C. Code § 15-364 .................................................................................................................3, 4

D.C. Code § 15-369 ...............................................................................................................4, 13

Other Authorities

1996 Arbitration Act of England, Section 101 ...................................................................4

D.C. District Court Local Civil Rule 7(h)........................................................................1

English Civil Procedure Rules 6.36, 6.44, 62.18(4) ........................................................4

English Civil Procedure Rules Practice Direction 6B, paragraph 3.1 .............................4

International Chamber of Commerce Rules of Arbitration (1998), Art. 28 ....................11

## <u>INTRODUCTION</u>

This is an action to recognize and enforce a foreign money judgment rendered by the Queen's Bench Division of the High Court of Justice in London, England ("English Court" and "English Judgment") against Defendants the Republic of Congo ("Congo") and Caisse Congolaise d'Amortissement ("CCA").  Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Civil Rule 7(h), Plaintiff Commissions Import Export, S.A. ("Commisimpex") respectfully moves for summary judgment on its Amended and Supplemental Complaint for the recognition and enforcement of the English Judgment.[1]

The case arises from the Defendants' decades-long refusal to make payment of vast sums of money owed to Commisimpex—payment owed under contracts entered into by Defendants in the 1980s; under an October 14, 1992, agreement between Commisimpex and the Congo for the repayment of outstanding debts owed to Commisimpex under the contracts ("Agreement"); under promissory notes drawn up by CCA and endorsed by the Congo on November 20, 1992 ("Promissory Notes"); under commitment letters issued by the Congo on March 3, 1993, corresponding to the Promissory Notes ("Commitment Letters"); under a December 2000 arbitral award arising out of these serial failures to pay, issued in France by a tribunal under the auspices of the International Court of Arbitration of the International Chamber of Commerce ("Award"); and under the English Judgment issued in June 2009 to recognize and enforce the Award.[2]

---

[1] Commisimpex filed this enforcement action in the U.S. District Court for the Southern District of New York on September 2, 2011.  (Docket Entry No. 1.)  Following service of process on Defendants, Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to transfer the action.  (Docket Entry Nos. 13-17.)  On April 27, 2012, the New York District Court issued an order transferring the action to this Court.  (Docket Entry No. 24.)  Pursuant to this Court's Scheduling Order, Commisimpex filed an Amended and Supplemental Complaint on June 22, and Defendants filed their Answer on July 6.  (Docket Entry Nos. 35, 36.)

[2]  The undisputed material facts that support this motion are set forth in the accompanying Statement of Material Facts As To Which There Is No Genuine Issue ("Rule 7(h) Statement"), and will not be repeated here.  Rather, the undisputed material facts will be described where relevant in the arguments below discussing why Commisimpex is entitled to judgment as a matter of law.

As set forth below, the English Judgment is enforceable as a matter of law under the D.C. Uniform Foreign-Country Money Judgment Recognition Act ("Recognition Act"), D.C. Code §§ 15-361 *et seq.*, because the undisputed material facts establish that the English Judgment grants recovery of a sum of money, and is final, conclusive, and enforceable as a matter of English law.   Defendants are not immune from this enforcement action under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA"), because each of the waiver, arbitration, and commercial activities exceptions applies to defeat the defense of immunity.

## ARGUMENT

I.   **THE ENGLISH JUDGMENT ENFORCING THE ARBITRAL AWARD MUST BE RECOGNIZED AND ENFORCED AS A MATTER OF LAW**

### A.   Summary Judgment Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "is appropriate where the pleadings and the record 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"   *Termorio S.A. E.S.P. v. Electranta S.P.,* 487 F.3d 928, 941 (D.C. Cir. 2007) (quoting *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1041 (D.C. Cir. 2003)); Fed. R. Civ. P. 56(c).   "The mere existence of *some* alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there be no *genuine* issue of *material* fact."   *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (internal quotation marks omitted).   A material fact is one that "might affect the outcome of the suit under the governing law."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to this standard, actions to enforce foreign judgments are routinely decided through summary judgment motions.   *See, e.g.*, *Society of Lloyd's v. Siemon-Netto*, 457 F.3d 94 (D.C. Cir. 2006) (affirming grant of summary judgment for plaintiff in action to enforce money

judgments obtained in England); *Delta Foods Ltd. v. Rep. of Ghana*, 265 F.3d 1068 (D.C. Cir. 2001) (affirming denial of motions to reopen judgment, following grant of summary judgment for plaintiff to enforce foreign judgment); *Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 800 F. Supp. 2d 161 (D.D.C. 2011) (enforcing foreign money judgment and arbitral award on summary judgment basis); *Nat'l Union Fire Ins. Co. of Pittsburgh v. People's Rep. of the Congo*, 729 F. Supp. 936, 945 (S.D.N.Y. 1989) (granting summary judgment motion where "[n]o material issue of fact exists for trial, and recognition and enforcement of the default judgment obtained in Great Britain is appropriate").

### B.   The English Judgment Is Enforceable As A Matter Of Law Under The D.C. Uniform Foreign-Country Money Judgments Recognition Act

The D.C. Uniform Foreign-Country Money Judgment Recognition Act provides that the Court "***shall*** recognize a foreign-country judgment" within the meaning of the Act.  D.C. Code § 15-364 (emphasis added).   Under the Recognition Act, a foreign-country judgment is enforceable if it (i) grants recovery of a sum of money, *id.* § 15-363(a)(1); and (ii) is final, conclusive, and enforceable under the law of the foreign country where rendered, *id.* § 15-363(a)(2).  These two straightforward conditions for enforcement are readily met here.

First, the English Judgment grants recovery of a sum of money by enforcing the arbitral Award and entering judgment in Commisimpex's favor for the amounts payable to Commisimpex under the Award.  Rule 7(h) Statement ¶¶ 14-15; Higham Decl. ¶¶ 7, 15; *see also* D.C. Code § 15-363(a)(1).  Second, the English Judgment is final, conclusive, and enforceable as a matter of English law because it was properly served via diplomatic channels on Defendants, and neither Defendant sought to set aside—or even respond to—the Judgment within the time period allotted for a challenge.  Rule 7(h) Statement ¶¶ 18-20, 23; Higham Decl. ¶¶ 12-13; *see also* D.C. Code § 15-363(a)(2).  Following service of process and expiration of the set-aside

period, the Judgment became final, conclusive, and enforceable as a matter of English law on March 2, 2010.  Rule 7(h) Statement ¶ 20; Higham Decl. ¶ 13.  Under English law, the Judgment is enforceable for a period of six years and, as such, remains in full force and effect, and enforceable in other jurisdictions. Rule 7(h) Statement ¶ 23; Higham Decl. ¶ 17; *see also* D.C. Code § 15-369 (relevant statute of limitations providing that this enforcement action may be commenced at any time during which the judgment is effective in the foreign country). Accordingly, the Judgment falls squarely within the definition of § 15-363(a), and is enforceable under § 15-364(a).

In addition, by operation of service of process of the Judgment (among other court papers) on the Defendants in accordance with all requirements of English law, the English Court properly had personal jurisdiction over Defendants.  Rule 7(h) Statement ¶ 19; Higham Decl. ¶¶ 10-12 (describing service of process via formal diplomatic channels pursuant to English Civil Procedure Rules ("CPR") 6.36, 6.44, 62.18(4), and CPR Practice Direction 6B, paragraph 3.1. The English Court had subject-matter jurisdiction over the action pursuant to Section 101 of the 1996 Arbitration Act of England.  Rule 7(h) Statement ¶ 19; Higham Decl. ¶ 12.  Defendants were both served on the same day and had "ample time" to set aside the English Judgment following service.  Higham Decl. ¶¶ 11, 18; Rule 7(h) Statement ¶ 20.  Thus, the English Court enforcement action "complied fully with English substantive and procedural law, consistent with the requirements of due process."  Higham Decl. ¶ 18; Rule 7(h) Statement ¶ 19.  Defendants bear the burden of establishing that a basis for non-recognition exists—and cannot meet that burden here.  *See* D.C. Code § 15-364(d).

Indeed, the English judicial system as a whole is "widely recognized as providing impartial and high-quality tribunals and procedures compatible with due process."  Higham Decl.

¶ 18; *see also, e.g.*, *Society of Lloyd's v. Siemon-Netto*, 457 F.3d at 105 ("[The] defendants do not assert that English courts fall within that category [of jurisdictions without impartial tribunals or procedures compatible with due process] and could not prove it if they did."); *Society of Lloyd's v. Ashenden*, 233 F.3d 473, 476 (7th Cir. 2000) ("Any suggestion that [the English] system of courts does not provide impartial tribunals or procedures compatible with the requirements of due process of law borders on the risible.") (internal quotation omitted); *Haynsworth v. The Corporation*, 121 F.3d 956, 967 (5th Cir. 1997) (noting that England is "a forum that American courts repeatedly have recognized to be fair and impartial"); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992) (holding that "the courts of England are fair and neutral forums"); *British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974) ("United States courts which have inherited major portions of their judicial traditions and procedure from the United Kingdom are hardly in a position to call the Queen's Bench a kangaroo court.").

Thus, it is no surprise that U.S. courts—including those in the District of Columbia—routinely recognize and enforce judgments rendered by English courts—including judgments against the Congo.  *See, e.g.*, *Society of Lloyd's v. Siemon-Netto*, 457 F.3d at 94; *Society of Lloyd's v. Turner*, 303 F.3d 325 (5th Cir. 2002); *Continental Transfert*, 697 F. Supp. 2d at 46; *Nat'l Union Fire Ins. Co. v. Congo*, 729 F. Supp. at 936.  This Court should do the same here.

## C.  Additional Interest And Costs Should Also Be Awarded As A Matter Of Law

Interest accrued on the amounts awarded under the Judgment should also be awarded to Commisimpex.  *See* D.C. Code § 15-108 ("In an action . . . to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable . . . until paid."); *see also, e.g.*, *Compagnie des Bauxites de Guinee v. Hammermills, Inc.*, 1992 WL 122712, at *8-9

(D.D.C. May 29, 1992) (confirming foreign arbitral award on summary judgment motion and awarding interest, pursuant to § 15-108, from the date of the award).  Further, costs in the present action should be awarded to Commisimpex.  *See* Fed. R. Civ. P. 54(d)(1)-(2).[3]

## II.   DEFENDANTS ARE NOT IMMUNE FROM THIS ENFORCEMENT ACTION

Defendants are both "foreign states" within the meaning of the FSIA.  *See* 28 U.S.C. § 1603; Rule 7(h) Statement ¶ 1; Compl. ¶ 5; Answer ¶ 5.[4]  Accordingly, the FSIA provides the sole basis for subject-matter and personal jurisdiction over Defendants in this action.  *See, e.g.*, *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  Under the FSIA, a court has jurisdiction over a civil action against a foreign state for any claim "with respect to which the foreign state is not entitled to immunity."  28 U.S.C. § 1330(a).  "'In accordance with the restrictive view of sovereign immunity'" under the FSIA, Defendants "bear[] the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity."  *Gulf Resources Am., Inc. v. Rep. of the Congo*, 370 F.3d 65, 70 (D.C. Cir. 2004) (quoting *Phoenix Consulting, Inc. v. Rep. of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000)).  Jurisdiction under the FSIA is an "issue completely separate from the merits of the action"— here, the issue of enforceability of the English Judgment.  *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya,* 533 F.3d 837, 843 (D.C. Cir. 2008).  Thus, it must be analyzed separately and apart from the basis for summary judgment discussed in Section I.

---

[3] Costs other than attorney's fees are awarded to a prevailing party under Federal Rule 54(d)(1).  Commisimpex also plans to move for an award of attorney's fees pursuant to Federal Rule 54(d)(2) following entry of judgment.

[4] It is undisputed that CCA is a department of the Ministry of Economy, Finance, and Planning of the Congo, with responsibility for management of the Congo's debts.  *See* Compl. ¶ 5; Answer ¶ 5.  This fact is further confirmed by Theodore Ikemo, Director General of CCA, in two separate declarations in this proceeding, stating that CCA is the "State agency in charge of debt matters for the Republic," and in that capacity "acts in connection with the ongoing administration of . . . restructuring certain of [the Congo's] outstanding debt."  Ikemo Decl. dated February 27, 2012 ¶ 3 (Docket Entry No. 17); Corrected Ikemo Decl. dated April 11, 2012 ¶ 3 (Docket Entry No. 23) (same).

The Court has jurisdiction over Defendants because three of the enumerated exceptions to immunity under the FSIA apply.  First, Defendants waived their immunity in the express waivers included in the 1993 Commitment Letters confirming their payment obligations to Commisimpex, and by operation of agreements to arbitrate in the Commitment Letters and 1992 Agreement.  *See* 28 U.S.C. § 1605(a)(1).  Second, because the English Judgment concerns a final arbitral Award issued in France governed in the United States by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), 9 U.S.C. §§ 201 *et seq.*, the arbitral award exception also applies.  *See* 28 U.S.C. § 1605(a)(6).  Third, Defendants are not immune because this enforcement action is based upon the commercial activities of Defendants. *See id.* § 1605(a)(2).  The application of any one of these exceptions on its own is sufficient to deprive Defendants of immunity.

### A. Defendants Explicitly And Repeatedly Waived Immunity From Any Legal Proceedings, Including Enforcement Actions, Relating To The Payments At Issue

Under the FSIA's waiver exception, a foreign state is not immune from suit in any case "in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  Courts will find that a foreign sovereign has explicitly waived immunity where the sovereign "has clearly and unambiguously done so."  *World Wide Minerals, Ltd. v. Rep. of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002).  Here, Defendants clearly and unambiguously waived their immunity pursuant to the express waiver language in the Commitment Letters, along with their consent to final and binding ICC arbitration in both the Agreement and Commitment Letters.

Courts routinely hold that express contractual waivers of the kind contained in the Commitment Letters are sufficient to waive a foreign sovereign's immunity from suit under § 1605(a)(1) of the FSIA.  *See, e.g.*, *Gulf Resources*, 370 F.3d at 72 (waiver by the Congo under

oil purchase agreement);[5] *World Wide Minerals*, 296 F.3d at 1162 & n.13 (foreign state waivers

under management and pledge agreements);[6] *Walker Int'l Holdings Ltd. v. Rep. of Congo*, 395

F.3d 229, 234 (5th Cir. 2004) (waiver by the Congo under production sharing contract);[7] *Atwood*

*Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1177 (5th Cir. 1989) (foreign

state agency or instrumentality waiver under financing agreement);[8] *Proyecfin de Venezuela, S.A.*

*v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390, 393 (2d Cir. 1985) (foreign state agency or

instrumentality waiver under loan agreement).[9]

---

[5] The explicit waiver at issue in *Gulf Resources* stated: "The transactions contemplated by this Agreement are commercial transactions, and the [Congo] shall not, by legislative or executive act or proceeding, or otherwise . . . (iii) in any manner avail itself of . . . any other benefits or protections of any nature whatsoever which might otherwise be available to the Government connected with the Government's status as a sovereign state in relation to the Agreement." *Gulf Resources*, 370 F.3d at 73.

[6] The explicit waiver at issue in *World Wide Minerals* stated: "In respect of any arbitration or legal action or proceedings arising out of or in connection with this Agreement, . . . [the Kazakhstan State Committee] hereby irrevocably agrees not to claim and hereby irrevocably waives . . . immunity for itself and the assets of the Republic of Kazakhstan to the full extent permitted by the laws of such jurisdiction," and "the Grantor [defined as Kazakhstan and TGK] hereby irrevocably agrees not to claim and hereby irrevocably waives . . . immunity for themselves and their Assets to the full extent permitted by the laws of such jurisdiction with the intent inter alia that the foregoing waiver of immunity shall have irrevocable effect for the purposes of the [FSIA] in any legal action or proceedings to which such Act applies." *World Wide Minerals*, 296 F.3d at 1162 n. 13.

[7] The explicit waiver at issue in *Walker* stated: "The Congo hereby irrevocably renounces to claim any immunity during any procedure relating to any arbitration decision handed down by an Arbitration Court . . . ." *Walker*, 395 F.3d at 234.

[8] The explicit waiver at issue in *Atwood Turnkey Drilling* stated: "The [Brazilian state-owned company] acknowledges and agrees that the activities contemplated by the provisions of this agreement and the notes are commercial in nature rather than governmental or public and therefore acknowledges and agrees that it is not entitled to any right of immunity on the grounds of sovereignty or otherwise with respect to such activities or in any legal action or proceeding arising out of or relating to this agreement or the notes. The Borrower . . . expressly and irrevocably waives any such right of immunity (including any immunity from the jurisdiction of any court or from any execution or attachment in aid of execution prior to judgment or otherwise) or claim thereto which may now or hereafter exist, and agrees not to assert any such right or claim in any such action or proceeding, whether in the United States or otherwise." *Atwood Turnkey Drilling*, 875 F.2d at 1177.

[9] The explicit waiver at issue in *Proyecfin* stated: "To the extent that any Borrower or the Guarantor may in any jurisdiction claim for itself or its assets immunity from suit, execution, attachment (whether in aid of execution, before judgment or otherwise) or other legal process and to the extent that in any such jurisdiction there may be attributed to itself or its assets the immunity (whether or not claimed) such Borrower and such Guarantor as the case may be hereby waives such immunity to the full extent permitted by the laws of such jurisdiction and, in particular, to the intent [sic] that in any proceedings taken in New York the foregoing waiver of immunity shall have effect under and be construed in accordance with the United States Foreign Sovereign Immunities Act [of] 1976." *Proyecfin*, 760 F.2d at 393.

In *Gulf Resources v. Congo*, the controlling authority here, the D.C. Circuit ruled that the Congo explicitly waived its immunity in an action arising from an oil purchase agreement where the agreement provided that the "transactions contemplated . . . are commercial transactions, and the Government shall not . . . in any manner avail itself of . . . any other benefits or protections of any nature whatsoever which might otherwise be available to the Government connected with the Government's status as a sovereign state in relation to this Agreement."  *Gulf Resources*, 370 F.3d at 72.  The court rejected the Congo's argument that the "benefits or protections" language meant some unspecified defense other than sovereign immunity, and deemed the provision a waiver of the Congo's immunity under the FSIA.  *Id.* at 72-73.

Defendants' explicit waivers in this case are even more clear and unambiguous than those in *Gulf Resources*.  In each of the Commitment Letters, by which they undertook to pay the Promissory Notes under the 1992 Agreement, Defendants agreed that:

> *This undertaking is considered as a commercial instrument governed by commercial law and is constituted for commercial purposes*.  It follows that *the signatory hereof irrevocably and on a final basis waives the right to invoke any immunity from legal proceedings as well as any immunity from execution* in the context of the settlement of a dispute relating to the undertakings which are the subject hereof.

Rule 7(h) Statement ¶ 6; s*ee also, e.g.*, Commitment Letter No. 75 (attached as Exhibit 6 to the Declaration of Michael A. Polkinghorne dated July 27, 2012 ("Polkinghorne Decl.")) at 2 (emphasis added); Commitment Letter No. 78 (Polkinghorne Decl., Ex. 7) at 2 (emphasis added); Commitment Letter No. 85 (Polkinghorne Decl., Ex. 8) at 2 (same); Commitment Letter No. 88 (Polkinghorne Decl., Ex. 9) at 2 (same); Commitment Letter No. 95 (Polkinghorne Decl., Ex. 10) at 2 (same); Commitment Letter No. 99 (Polkinghorne Decl., Ex. 11) at 2 (same); Commitment Letter No. 105 (Polkinghorne Decl., Ex. 12) at 2 (same); Commitment Letter No. 108 (Polkinghorne Decl., Ex. 13) at 2 (same).

9

Defendants' intent to waive immunity, as reflected in the inclusion of the **same** waiver language in **each** of the Commitment Letters, could not be more clear.  *See* Rule 7(h) Statement ¶ 5; First Witness Statement of Michael A. Polkinghorne dated June 16, 2009 ("Polkinghorne I") (Polkinghorne Decl., Ex. 1) ¶ 12 (confirming that all Commitment Letters contained substantially the same terms, but for references to different series of Promissory Notes); *cf. World Wide Minerals*, 296 F.3d at 1163 ("[T]he fact is that the presence of waivers in only two of four agreements creates real ambiguity as to Kazakhstan's intent.").  Defendants' broad waiver as to "any immunity," moreover, plainly extends to both "legal proceedings" and "execution" actions in connection with any dispute relating to "undertakings which are the subject hereof"—*i.e.*, Defendants' payment obligations under the Promissory Notes drawn up by CCA pursuant to the Agreement, as further confirmed by the Commitment Letters.

At the time of execution of the Commitment Letters, Defendants already had faced enforcement actions in the United States similar to the present case, and thus were on notice that agreement to such a contractual immunity waiver could lead to the entry of an enforcement judgment against it in U.S. courts.  *See, e.g.*, *Nat'l Union Fire Ins. Co.*, 729 F. Supp. at 940, 945 (holding that the Congo had explicitly waived sovereign immunity under contractual waiver, and granting recognition of default English judgment against the Congo).

Defendants' clear and unambiguous waiver of immunity under the Commitment Letters is reinforced by their agreement to ICC arbitration in both the Commitment Letters and the Agreement governing issuance of the Promissory Notes.  Each Commitment Letter provided that "[a]ll disputes arising from the present contract shall be definitively settled in accordance with the [ICC Rules] by one or several arbitrators in conformity with said Rules.  The place of arbitration shall be PARIS (FRANCE), and the language of arbitration shall be French."

Rule 7(h) Statement ¶ 6; Polkinghorne Decl., Exs. 6-13.  Likewise, Article 10 of the Agreement established that disputes "shall be resolved by one or more arbitrators designated in accordance with the [ICC Rules], whose ruling shall not be subject to appeal."  Rule 7(h) Statement ¶ 4; Agreement (Polkinghorne Decl., Ex. 5).  Notably, the ICC Rules contain their own waiver provision with respect to enforcement of the arbitral Award:

> *Every Award shall be binding on the parties*.  By submitting the dispute to arbitration under these Rules, the parties undertake to carry out any Award without delay and *shall be deemed to have waived their right to any form of recourse* insofar as such waiver can validly be made.

Rule 7(h) Statement ¶ 11 (quoting 1998 ICC Rules, Art. 28(6) (emphasis added)); 1998 ICC Rules (Polkinghorne Decl., Ex. 14).

In *Walker v. Congo*, a proceeding similar to this one, the Fifth Circuit ruled that the Congo's agreement to abide by the ICC Rules in the arbitration "precludes the [Congo] from asserting a sovereign immunity defense" and, therefore, that the Congo had "explicitly waived its sovereign immunity" in proceedings to recover payment owed under the award.  *Walker*, 395 F.3d at 234.  This Court should hold the same, further buttressing Defendants' separate, clear, and unmistakable waiver in the Commitment Letters.

Given Defendants' explicit immunity waiver under the Commitment Letters *and* the agreement to arbitrate by ICC Rules containing a separate waiver provision, this case is readily distinguishable from those cases in which courts have declined to find an *implicit* waiver of immunity solely by virtue of a foreign sovereign's agreement to arbitrate in another country. *See, e.g.*, *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999).  In fact, in *Gulf Resources v. Congo*, the D.C. Circuit addressed a contractual immunity waiver paired with an agreement to arbitrate, much as in this case, and expressly distinguished the *Creighton* line of cases on that basis:  "It is true that most courts have refused to find an *implicit* waiver of

immunity to suit in American courts from a contract clause providing for arbitration in a country other than the United States.   But in those cases the relevant contract contained *only* an arbitration provision.   There was not, as there is here, a separate, explicit waiver provision." *Gulf Resources*, 370 F.3d at 73-74 (emphasis in original) (internal citations and quotations omitted).   The Court of Appeals thus rejected the Congo's immunity defenses.   *Id.* at 74. This Court should do the same here.

Even if the *Creighton* line of cases were to apply, however, there is a sufficient basis to find that there has been an implicit waiver here.   In *Creighton*, the sole factual basis for an implicit waiver proffered by the plaintiff was that the defendant had agreed to conduct an arbitration in a country that was a signatory to the New York Convention.   *Creighton*, 181 F.3d at 123.   The court declined to apply the exception because "Creighton directs us to no other evidence of such an intent" to waive immunity.   *Id.*   Here, as discussed above, the evidence is overwhelming that Defendants intended to waive their immunity through the Commitment Letters and other acts and agreements.   Thus, the requirement for a manifestation of intent to waive immunity has been met implicitly as well as explicitly.

### B.      Defendants Are Not Immune Because This Action Involves A Confirmed Foreign Arbitral Award

Defendants also are not immune from this action because the English Judgment to be enforced concerns an arbitral Award issued in France.   *See* Compl. ¶ 6; Answer ¶ 28 (asserting defense as to "Plaintiff's attempt to confirm the 2000 Award through recognition of the 2009 English Court Judgment").   Under the FSIA's arbitral award enforcement exception to immunity, a foreign sovereign is not immune "in any case . . . in which the action is brought . . . to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States

calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6)(B). The New York Convention, codified at 9 U.S.C. §§ 201 *et seq.*, is such a treaty in force in the United States that calls for recognition of the Award. *See, e.g.*, *Continental Transfert*, 800 F. Supp. 2d at 164 (noting that New York Convention "provides that signatory nations are to recognize and enforce arbitral awards rendered in other nations") (quoting *Termorio*, 487 F.3d at 933); *Creighton*, 181 F.3d at 123-24 ("[T]he New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception.") (citation omitted). Accordingly, the award enforcement exception to immunity applies here—notwithstanding that the three-year statute of limitations for enforcement under the New York Convention would have run if it applied to the merits of this case. *See* 9 U.S.C. § 207. Because the FSIA inquiry is an "issue completely separate from the merits of the action," however, the New York Convention statute of limitations is irrelevant to the question of whether the exception applies. *See La Reunion Aerienne,* 533 F.3d at 843.[10]

The Second Circuit's ruling in *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala* ("*Seetransport*"), 989 F.2d 572 (2d Cir. 1993), is directly on point in distinguishing the immunity determination from the merits of enforcement. In that case, the plaintiff moved for summary judgment to enforce an ICC arbitration award issued in France and, alternatively, to recognize and enforce a judgment of the Paris Court of Appeals upholding the award. The Second Circuit ruled that it had jurisdiction under the FSIA because the defendant, an agency or instrumentality of Romania, had waived its immunity by agreeing to arbitrate in France pursuant to the ICC Rules, and by operation of Romania's status as a signatory to the New York Convention. *Seetransport*, 989 F.2d at 578-79 ("[W]hen Navimpex

---

[10] As discussed in Section I, the relevant statute of limitations for the enforcement of the English Judgment is D.C. Code § 15-369, which allows enforcement of a foreign judgment so long as the judgment remains in effect in the foreign country.

entered into a contract with Seetransport that had a provision that any dispute would be submitted to arbitration, and then participated in an arbitration in which an award was issued against it, logically . . . it had to have contemplated the involvement of the courts of any of the [Convention's] Contracting States in an action to enforce the award.").  Although the district court also held that it had jurisdiction through retroactive application of the recently-enacted § 1605(a)(6), the Second Circuit declined to address that grounds for jurisdiction because the waiver grounds were sufficient.  *See id.* at 575-77.

Having determined that it had jurisdiction over the action largely by virtue of the arbitral award, the Second Circuit nonetheless ruled that enforcement of the award was time-barred by the New York Convention's three-year limit for applications to enforce an arbitral award.  *Id.* at 581; *see also* 9 U.S.C. § 207.  However, the *Seetransport* court held that it **could enforce** the French judgment confirming the arbitral award because the alternative (and timely) cause of action for judgment enforcement was "so closely related to the claim for enforcement of the arbitral award."  *Seetransport*, 989 F.2d at 583; *cf. Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 391 (2d Cir. 2000) (declining to apply arbitration-related immunity waiver to action to enforce foreign judgments because judgments did not result directly from award, and so it was "hard to view this suit as being in essence a suit designed to enforce an arbitral award").  Thus, the jurisdictional predicate for the time-barred claim to enforce the arbitral award also could serve as the jurisdictional predicate for the closely-related claim to enforce the foreign judgment confirming the award.

Just as in *Seetransport*, Commisimpex seeks to enforce a foreign judgment confirming an ICC arbitral Award, and any claim to enforce the Award directly would be time-barred by operation of 9 U.S.C. § 207.  Just as in *Seetransport*, Commisimpex's judgment-enforcement

claim is "so closely related" to the award-enforcement claim that a jurisdictional predicate for the latter should apply with equal force to the former. *Seetransport*, 989 F.2d at 583. Because Commisimpex seeks to domesticate the ICC Award through enforcement of the English Judgment—an action made necessary in no small part by Defendants' refusal to pay the Award in the **twelve years** since it was issued—the arbitral Award can and should serve as a predicate for this Court's jurisdiction. *See id.*; *see also Transatlantic*, 204 F.3d at 391. Accordingly, the FSIA arbitration enforcement exception to immunity applies, and neither Defendant is immune from this action.

### C.   Defendants Are Not Immune Under The Commercial Activities Exception To The FSIA

Under the FSIA's commercial activity exception, a foreign state is not immune from suit in connection with its "commercial activity." 28 U.S.C. §1605(a)(2); *see also Foremost-McKesson, Inc. v. The Islamic Rep. of Iran*, 905 F.2d 438 (D.C. Cir. 1990). A foreign state is "involved in a commercial activity" under the FSIA when it functions like a private party within the market rather than in a governmental or public capacity. *Rep. of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612-13 (1992).

In *Weltover*, the Supreme Court found that Argentina's issuance of U.S. dollar-denominated bonds was a "commercial activity" with a direct effect in the United States, notwithstanding the alleged governmental purposes for the money. *Id.* at 615-16. The court said: "[t]he commercial character of the [bonds] is confirmed by the fact that they are in almost all respects garden-variety debt instruments: They may be held by private parties; they are negotiable and may be traded on the international market . . . and they promise a future stream of cash income." *Id.* at 615.

15

This action to recognize the English Judgment is based upon Defendants' refusal to make payment owed to Commisimpex—payment owed under contracts entered into by Commisimpex and the Congo in the 1980s; under an agreement between Commisimpex and the Congo for the repayment of outstanding debts under the contracts; under Promissory Notes drawn up by CCA and endorsed by the Congo; under the 2000 Arbitral Award; and under the English Judgment. Rule 7(h) Statement ¶¶ 2-15.   As in *Weltover*, Defendants' entry into these contracts and issuance of subsequent agreements and promissory notes, in particular the U.S. dollar-denominated notes, is commercial activity under the FSIA.   The fact that this is an action to recognize a judgment "based upon" the underlying contracts and notes does not alter this analysis.  *See, e.g., Servaas Inc. v. Rep. of Iraq*, 2011 WL 454501 at *1 (2d Cir. Feb. 16, 2011) (recognizing French judgment against Iraq and Iraq's Ministry of Industry under New York Uniform Money Judgment Recognition Act, following finding that underlying contracts constituted commercial activity under the FSIA: "In applying the commercial activity exception to an action for recognition of a foreign judgment, we look to the underlying conduct that gave rise to the judgment.").   Accordingly, the FSIA commercial activity exception to immunity applies, and neither Defendant is immune from this action.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Commisimpex's motion and the relief

requested therein, and enter judgment recognizing and enforcing the English Judgment against

Defendants the Congo and CCA.

Dated: Washington, D.C.                  Respectfully submitted,
      July 30, 2012

**WHITE & CASE**LLP

/s/ Francis A. Vasquez, Jr.
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Jonathan C. Ulrich (D.C. Bar No. 500832)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for Commissions Import Export, S.A.*

17