**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT, S.A.,　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　*Plaintiff*,　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　*v.*　　　　　　　　　　　　　　　) | Civil Action No. |
| 　　　　　　　　　　　　　　　　　　　) | 1:12-CV-000743-ABJ |
| THE REPUBLIC OF THE CONGO AND　　　) | |
| CAISSE CONGOLAISE D'AMORTISSEMENT, ) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| 　　　　*Defendants*.　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |

**COMMISSIONS IMPORT EXPORT, S.A.'S**
**REPLY MEMORANDUM IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

**WHITE & CASE**LLP

Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Jonathan C. Ulrich (D.C. Bar No. 500832)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for Commissions Import Export, S.A.*

October 5, 2012

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ..........................................................................................................................1

ARGUMENT...................................................................................................................................1

I.    DEFENDANTS CONCEDE THAT JURISDICTION IS PROPER UNDER THE
      FOREIGN SOVEREIGN IMMUNITIES ACT....................................................................1

II.   DEFENDANTS OFFER NO BASIS TO PRECLUDE RECOGNITION AND
      ENFORCEMENT OF THE ENGLISH JUDGMENT AS A MATTER OF LAW.............2

      A.    Defendants Concede That There Are No Material Facts In Dispute And
            That This Case Can Be Decided On Summary Judgment ......................................2

      B.    Defendants Cannot Dispute That The English Judgment Is A Foreign
            Money Judgment That Is Subject To Enforcement Under The Recognition
            Act..........................................................................................................................3

      C.    Defendants Cannot Establish A Basis For Non-Enforcement Because No
            Such Basis Exists ...................................................................................................4

            1.    The English Judicial System Is Fair And Impartial, And The
                  English Court Properly Exercised Subject Matter Jurisdiction ..................4

            2.    The English Court Properly Exercised Personal Jurisdiction .....................5

      D.    Enforcement Of The English Judgment Is Not Preempted By Federal Law.........10

            1.    Defendants Ignore The Heavy Presumption Against Preemption .............10

            2.    Defendants Cannot Show That Congress Clearly Intended To
                  Regulate Enforcement Of Foreign Judgments Under the FAA.................12

            3.    Enforcement Of The English Judgment Is Consistent With The
                  Purposes And Objectives of Congress ......................................................18

      E.    Commisimpex Is Entitled To Prejudgment Interest...............................................20

CONCLUSION..............................................................................................................................23

# TABLE OF AUTHORITIES

<u>Federal Cases</u>                                                                                           <u>Page(s)</u>

*3M Co. v. Boulter*, 842 F. Supp. 3d 85 (D.D.C. 2012) ...............................................6

*Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ............................... 8-9, 16

*Arizona v. United States*, 567 U.S. __, 132 S.Ct. 2492 (2012)...................................11, 18

*Athridge v. Iglesias*, 382 F. Supp. 2d 42 (D.D.C. 2005)................................................21

BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil,
    184 F.R.D. 3 (D.D.C. 1999).......................................................................6

*British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869 (9th Cir. 1974) ..........................5

Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,
    117 F.3d 655 (2d Cir. 1997)....................................................................19

Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc., 899 F. Supp.
    1248 (S.D.N.Y. 1995) ...................................................................6, 7, 8

Compagnie des Bauxites de Guinee v. Hammermills, Inc., 1992 WL 122712
    (D.D.C. May 29, 1992) .........................................................................21

Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria,
    697 F. Supp. 2d 46 (D.D.C. 2010) ...............................................................5

* Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria,
    800 F. Supp. 2d 161 (D.D.C. 2011) .............................................................17

Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria,
    850 F. Supp. 2d 277 (D.D.C. 2012) .............................................................21

*Erie v. Tompkins*, 304 U.S. 64 (1938) .................................................................12

*Everplay Installation Inc. v. Guindon*, 471 Fed. App'x 812 (10th Cir. 2012)...............................17

*Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512 (2d Cir. 1975)...............................................17

*G.E. Transport S.p.A. v. Rep. of Albania*, 693 F. Supp. 2d 132 (D.D.C. 2010) ........................ 20

*Guardian Ins. Co. v. Bain Hogg Int'l Ltd.*, 52 F. Supp. 2d 536 (D.V.I. 1999)...............................7

*Haynsworth v. The Corporation*, 121 F.3d 956 (5th Cir. 1997) .......................................4

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ...............................................................16

\* *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313
(2d Cir. 1973)........................................................................................13, 15, 16

*Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. ___, 132 S. Ct. 1201 (2012) ..................13, 14

*Maryland v. Louisiana*, 451 U.S. 725 (1981) .........................................................................10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117 (1973)................................16

*Nat'l Union Fire Ins. Co. v. Congo*, 729 F. Supp. 936 (S.D.N.Y. 1989) .......................................5

*Ocean Warehousing B.V. v. Baron Metals and Alloys, Inc.*,
157 F. Supp. 2d 245 (S.D.N.Y. 2001)...............................................................................17

*Oldham v. Korean Air Lines Co.*, 127 F.3d 43 (D.C. Cir. 1997)...................................................22

*Perry v. Thomas*, 482 U.S. 483 (1987) ...................................................................................14

*Porisini v. Petricca*, 456 N.Y.S.2d 888 (N.Y. App. Div. 1982)......................................................8

*Practical Concepts, Inc. v. Rep. of Bolivia*, 811 F.2d 1543 (D.C. Cir. 1987) ...............................9

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216
(D.C. Cir. 2008) .............................................................................................................22

*Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953 (10th Cir. 1992)..............................5

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) ...................................................................18

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex
Centrala Navala*, 989 F.2d 572 (2d Cir. 1993)...................................................................12

\* *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex
Centrala Navala*, 29 F.3d 79 (2d Cir. 1994) .....................................................................16

*Society of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000) .......................................................4

*Society of Lloyd's v. Siemon-Netto*, 457 F.3d 94 (D.C. Cir. 2006) ...........................................4, 12

*Society of Lloyd's v. Turner*, 303 F.3d 325 (5th Cir. 2002)............................................................4

*Termorio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007) .......................................19

\* *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296
(D.C. Cir. 2005) ...............................................................................................................9

*Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709
(2d Cir. 1987)..................................................................................................................16

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr, Univ.,*
  489 U.S. 468 (1989)..................................................................................11

*Williams Enterprises, Inc. v. Sherman R. Smoot Co.*, 936 F.2d 230 (D.C. Cir. 1991) .................21

*Wyeth v. Levine*, 555 U.S. 555 (2009) ..................................................................................10, 12


Federal Statutes

9 U.S.C. § 9..................................................................................13

9 U.S.C. §§ 201 *et seq.* ..................................................................................1

9 U.S.C. § 202..................................................................................13

9 U.S.C. § 207..................................................................................13

28 U.S.C. § 1330..................................................................................2

28 U.S.C. §§ 1602 *et seq.* ..................................................................................8

28 U.S.C. § 1605..................................................................................1, 2, 8, 9

28 U.S.C. § 1608..................................................................................2

Fed. R. Civ. P. 44.1..................................................................................6

Fed. R. Civ. P. 56(a)..................................................................................3


D.C. Statutes

D.C. Code § 15-108..................................................................................21

D.C. Code §§ 15-361 *et seq.* ..................................................................................1

D.C. Code § 15-363..................................................................................3, 18

D.C. Code § 15-364..................................................................................3, 4, 6, 18

D.C. Code § 15-365..................................................................................6, 7

<u>Other Authorities</u>

1996 Arbitration Act of England, Section 101 ...................................................................5

English Civil Procedure Rules ("CPR") 6.36, 6.44, 62.18(4)......................................5, 7

Restatement (Third) of Foreign Relations, § 481, *cmt. a*...............................................12

Restatement (Third) of Foreign Relations, § 481, *cmt. i* ..............................................18

Restatement (Third) of Foreign Relations, Ch. 8, Introductory Note...........................12

S. Rep. No. 91-702, 91st Cong. 2d Sess. (1970) ............................................... 14-15, 19

## INTRODUCTION

The opposition submission filed by Defendants the Republic of Congo ("Congo") and Caisse Congolaise d'Amortissement ("CCA") offers no basis to preclude recognition of the foreign money judgment rendered against Defendants by the Queen's Bench Division of the High Court of Justice in London, England ("English Court" and "English Judgment").  Indeed, Defendants' opposition only underscores that the English Judgment must be recognized and enforced as a matter of law under the D.C. Uniform Foreign-Country Money Judgment Recognition Act ("Recognition Act"), D.C. Code §§ 15-361 *et seq.*

Defendants concede that they have expressly waived immunity from the Court's jurisdiction and that jurisdiction is proper; that there are no material facts in dispute, including Defendants' failure to satisfy the English Judgment and the underlying December 2000 arbitral award ("Award"); and that Commisimpex's Motion is ripe for summary judgment.  Defendants' one defense to recognition under the Recognition Act—*i.e.*, that the English court lacked personal jurisdiction—completely disregards the applicable English law, and misapplies D.C. law in its stead.  Defendants' additional argument regarding the purported preemption of the Recognition Act by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.*, is also without merit and should be rejected, as all other courts have done.

## ARGUMENT

### I.  DEFENDANTS CONCEDE THAT JURISDICTION IS PROPER UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT

Defendants concede outright that "the Promissory Notes at issue in the 2000 Award contain an express waiver of sovereign immunity for purposes of 28 U.S.C. § 1605(a)(1)," and thus that "this court has subject matter jurisdiction to adjudicate Commisimpex's cause of action for recognition of the English [Judgment]."  Defendants' Memorandum of Law in Opposition to

Commisimpex's Motion for Summary Judgment ("Opp'n") at 41.[1]  It is further undisputed that Commisimpex effected valid service of process in this proceeding on both the Congo and CCA pursuant to 28 U.S.C. § 1608.  *See* Docket Entry Nos. 5-7.  Accordingly, Defendants are not immune from this action, and the Court properly has jurisdiction to enforce the English Judgment against them.  *See* 28 U.S.C. § 1330.

## II.  DEFENDANTS OFFER NO BASIS TO PRECLUDE RECOGNITION AND ENFORCEMENT OF THE ENGLISH JUDGMENT AS A MATTER OF LAW

### A.  Defendants Concede That There Are No Material Facts In Dispute And That This Case Can Be Decided On Summary Judgment

Defendants concede that Commisimpex's enforcement petition is ripe for summary judgment.  In their own words, Defendants "do not contend that Commisimpex's Motion for Summary Judgment raises any genuine issue of material fact that precludes the Court from determining on a motion for summary judgment whether or not Commisimpex has demonstrated its entitlement as a matter of law to recognition of the [English Judgment]."  Defs.' Rule 7(h) Statement, at 1.  Defendants further admit to all of the material facts that warrant an award of summary judgment in Commisimpex's favor, including, *inter alia*:

- "Defendants admit they did not pay certain of the Promissory Notes referred to in paragraph 7 [of Commimpex's Rule 7(h) Statement] as they came due . . . ." *Id.* ¶ 7.

- It is "[n]ot disputed" that Commisimpex initiated arbitration under the applicable agreements following Defendants' failure to pay. *Id.* ¶ 8.

- "Defendants admit that the arbitral [A]ward referred to in paragraph 9 [of Commimpex's Rule 7(h) Statement] was issued in Commisimpex's favor on December 3, 2000 for the amounts set forth in that paragraph . . . ." *Id.* ¶ 9.

- "Defendants admit that they did not pay Commisimpex the full amounts owed under the [A]ward . . . ." *Id.* ¶ 12.

---

[1] Despite conceding that they have expressly waived immunity, Defendants needlessly suggest that this is an "additional ground" for jurisdiction that Commisimpex did not assert in its Amended Complaint.  Opp'n at 41.  Contrary to Defendants' misreading of the plain language, the Amended Complaint stated that "[t]his Court has jurisdiction under 28 U.S.C. § 1605(a)(1), (2) and (6)."  Am. Compl. ¶ 6.  The Amended Complaint did not state that Commisimpex relied only on the implied waiver component of Section 1605(a)(1).

- ▪ "Defendants admit that the English Court issued an order on July 10, 2009" to recognize and enforce the Award.  *Id.* ¶ 14.

- ▪ "Defendants admit that the English Court ordered payment of the amounts set forth in paragraph 15" of Commimpex's Rule 7(h) Statement.  *Id.* ¶ 15.

- ▪ "Defendants admit that the English Court permitted Commisimpex to effect service of process outside of England and directed that the Congo and CCA could apply to set aside the Judgment within 25 days of service . . . ."  *Id.* ¶ 16.

- ▪ "Defendants admit that they did not respond or acknowledge service of the [English] judgment . . . ."  *Id.* ¶ 20.

Defendants agree that summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Opp'n at 10 (quoting Fed. R. Civ. P. 56(a)).  As Defendants themselves make clear, the material facts in this case are undisputed.  Accordingly, the Court must recognize and enforce the English Judgment as a matter of law, as set forth in Commisimpex's Motion and below.

### B.     Defendants Cannot Dispute That The English Judgment Is A Foreign Money Judgment That Is Subject To Enforcement Under The Recognition Act

The D.C. Recognition Act provides that the Court "***shall*** recognize a foreign-country judgment"—*i.e.*, recognition is mandatory—if the judgment (i) grants recovery of a sum of money; and (ii) is final, conclusive, and enforceable under the law of the foreign country where rendered.  D.C. Code §§ 15-363–15-364 (emphasis added); *see also* Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Mot.") at 3-4 (citing same). Defendants observe that "[c]ertain foreign judgments are outside the ambit" of the Recognition Act, including judgments for taxes, fines or penalties, and those relating to domestic relations. Opp'n at 35 (citing D.C. Code § 15-363(b)(1)-(3)).  However, Defendants do not—and cannot— argue that the English Judgment falls under any of these exemptions and would be outside of the reach of the Recognition Act.  Indeed, Commisimpex established in its Motion that the English Judgment grants recovery of a sum of money, and is final, conclusive, and enforceable under

English law.  Mot. at 3-4; 7(h) Statement ¶¶ 20-23; Declaration of John A. Higham Q.C. dated

July 27, 2012 ("Higham") ¶¶ 13-17.  Defendants do not suggest otherwise.

### C.    Defendants Cannot Establish A Basis For Non-Enforcement Because No Such Basis Exists

Under the Recognition Act, Defendants bear the burden of establishing the existence of a

ground for non-recognition.  D.C. Code § 15-364(d) ("A party resisting recognition of a foreign-

country judgment has the burden of establishing that a ground for nonrecognition stated [under

the Act] exists.").  As Defendants note, the Court "may not" recognize the English Judgment if

Defendants establish that one of the following grounds for non-recognition applies: (i) the

English Judgment was "rendered under a judicial system that does not provide impartial tribunals

or procedures compatible with the requirements of due process of law"; (ii) the English Court did

not have personal jurisdiction over Defendants; or (iii) the English Court did not have subject

matter jurisdiction.  *Id.* § 15-364(b); Opp'n at 35-36.  Defendants offer nothing to prove that the

first or third basis for non-recognition applies, and offer a readily refuted argument as to the

second.

### 1.    The English Judicial System Is Fair And Impartial, And The English Court Properly Exercised Subject Matter Jurisdiction

Defendants do not contend that the English Judgment was rendered in an unfair or

otherwise improper judicial system.  As Commisimpex established, the English judicial system

as a whole is "widely recognized as providing impartial and high-quality tribunals and

procedures compatible with due process," Mot. at 4-5 (quoting Higham ¶ 18), and thus that U.S.

courts accord considerable respect to English court judgments, including when asked to

recognize and enforce them.  Mot. at 5 (citing *Society of Lloyd's v. Siemon-Netto*, 457 F.3d 94,

105 (D.C. Cir. 2006); *Society of Lloyd's v. Turner*, 303 F.3d 325 (5th Cir. 2002); *Society of

Lloyd's v. Ashenden*, 233 F.3d 473, 476 (7th Cir. 2000); *Haynsworth v. The Corporation*, 121

F.3d 956, 967 (5th Cir. 1997); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958

(10th Cir. 1992); *British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th Cir.

1974); *Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46, 62-63

(D.D.C. 2010); *Nat'l Union Fire Ins. Co. v. Congo*, 729 F. Supp. 936, 944-45 (S.D.N.Y. 1989)).

Accordingly, the point is conceded.

Defendants also do not contend that the English Court did not have subject matter

jurisdiction in the enforcement proceeding.  Commisimpex established that subject matter

jurisdiction was proper as a matter of English law under Section 101 of the 1996 Arbitration Act

of England.  Mot. at 4; Rule 7(h) Statement ¶ 19; Higham ¶ 12.  This point, too, is conceded.

### 2.    The English Court Properly Exercised Personal Jurisdiction

#### a.    Defendants Failed To Address Or Refute The Applicable English Law

Defendants offer only one purported ground under the Recognition Act for the Court to

withhold recognition of the English Judgment: that the English Court allegedly did not have

personal jurisdiction.   Opp'n at 36-38.   Contrary to Defendants' unsubstantiated claim,

Commisimpex established in its Motion and in the Declaration of John A. Higham Q.C. that the

English Court properly exercised personal jurisdiction over both Congo and CCA, as a matter of

English law, under English Civil Procedure Rules ("CPR") 6.36, 6.44, 62.18(4), and CPR

Practice Direction 6B, paragraph 3.1.   Mot. at 4; Higham ¶¶ 10-12.   In his supplemental

declaration submitted herewith, Mr. Higham reaffirms his prior conclusions, and elaborates on

the statutory bases for jurisdiction which governed the English proceeding.  *See* Supplemental

Declaration of John A. Higham Q.C. dated October 5, 2012 ("Higham II") ¶¶ 2, 4-6.

The Court should consider Mr. Higham's two declarations as evidence of English law

and, accordingly, conclude that personal jurisdiction was proper as a matter of law.  *See* Fed. R.

Civ. P. 44.1 ("The court, in determining foreign law, may consider any relevant material or source, including testimony . . . .  The court's determination shall be treated as a ruling on a question of law."); *see also 3M Co. v. Boulter*, 842 F. Supp. 3d 85, 114 (D.D.C. 2012) (noting that "both parties have submitted declarations [under Rule 44.1] from lawyers in England to assist the Court with an understanding of English law"); *BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 184 F.R.D. 3, 9 (D.D.C. 1999) (denying motion to strike declaration from English barrister because "for questions of foreign law, [Rule] 44.1, which permits expert testimony on such questions, controls"); *Canadian Imperial Bank of Commerce v. Saxony Carpet Co., Inc.*, 899 F. Supp. 1248, 1253 (S.D.N.Y. 1995) (concluding, in a judgment recognition action, that the "Canadian court obtained valid in personam jurisdiction over Defendant" following a review of a "[Rule 44.1] declaration by an attorney admitted into the bar in Quebec as proof of the Quebec standards for in personam jurisdiction").  Notably, Defendants offer ***no evidence or argument*** to rebut the English Court's conclusion (and Commisimpex's showing) that the Court properly exercised personal jurisdiction over both Defendants under English law. Absent any such showing by Defendants, they necessarily fail to carry their burden of establishing that the English Court did not have personal jurisdiction.  *See* D.C. Code § 15-364(d).

While entirely ignoring the English Court's exercise of personal jurisdiction pursuant to express statutory provisions of English law, Defendants misleadingly argue that "*none* of the[] indicia of personal jurisdiction" set forth in Section 15-365(a)(1)-(6) of the Recognition Act "existed in Commisimpex's suit against the Congo and CCA in London."  Opp'n at 36 (emphasis in original).  Notably, Defendants purposefully ***omit*** any mention of the immediately following subsection of Section 15-365, which specifies that "[t]he list of bases for personal jurisdiction in

subsection (a) of this section *is not exclusive*.   The courts of the District of Columbia may recognize bases of personal jurisdiction other than those listed in subsection (a) of this section *as sufficient to support a foreign-country judgment*."   D.C. Code § 15-365(b) (emphasis added).

By the plain terms of the statute, the absence of the six indicia of jurisdiction under Section 15-365(a) is hardly dispositive.   In fact, the language of Section 15-365(a) reveals the misguided nature of Defendants' argument and their misreading of the Recognition Act, which is designed to encourage enforcement, not prevent it.   In that regard, Section 15-365(a) does not relate to grounds for non-enforcement, but rather specifies jurisdictional bases for which enforcement cannot be denied.   Thus, if one of the six enumerated grounds is met, a foreign-country judgment "may not be refused recognition for lack of personal jurisdiction."   *Id.* § 15-365(a).

The English jurisdictional statutes that governed the English proceeding are sufficient to support the English Judgment.   *See* D.C. Code § 15-365(b); Higham ¶ 12; Higham II ¶¶ 2, 4-6; CPR 6.36, 6.44, 62.18(4), & CPR Practice Direction 6B ¶ 3.1; *see also Canadian Imperial Bank*, 899 F. Supp. at 1252 (accepting that jurisdiction was proper under Quebec law as well as New York law, and noting that New York law "dictates that the exceptions involving jurisdictional defects . . .  be construed especially narrowly when the alien jurisdiction is . . . a sister common law jurisdiction with procedures akin to our own. . . . [M]ere divergence from American procedure does not render a foreign judgment unenforceable.") (internal citations omitted); *see also Guardian Ins. Co. v. Bain Hogg Int'l Ltd.*, 52 F. Supp. 2d 536, 542 (D.V.I. 1999) (in action to recognize English court default judgment, looking to the English court's asserted bases for jurisdiction and finding that "the English Court's assertion of jurisdiction . . . was reasonable" and did not "appear to be clearly untenable").   The Court need not look any further.

–7–

Accordingly, Defendants' suggestion that, absent the six indicia, the Court should look instead to jurisdictional statutes of the District of Columbia to determine the propriety of the jurisdiction of an English Court in an English proceeding is without merit.  *See* Opp'n at 37.

> **b.** **District of Columbia Law Does Not Govern The Analysis Of English Law Jurisdiction And, In Any Event, Supports The Jurisdiction Of The English Court**

Even if the Court were to look beyond the straightforward jurisdictional conclusions reached by the English Court pursuant to the applicable English statutory law, District of Columbia law also supports the English Court's exercise of jurisdiction.  Courts considering the alternative of applying the local law of the recognizing state to assess the suitability of a foreign court's jurisdiction look not only to the state's long-arm statute, as Defendants suggest, but to ***any*** basis for jurisdiction that would be acceptable in the recognizing forum.  *See, e.g., Canadian Imperial Bank*, 899 F. Supp. at 1252-53 (holding that state recognition statute "permits a court 'to recognize other bases of jurisdiction and New York may, and appropriately should, recognize a foreign judgment predicated on ***any jurisdictional basis*** it recognizes in its internal law'") (emphasis added) (quoting *Porisini v. Petricca*, 456 N.Y.S.2d 888, 890 (N.Y. App. Div. 1982)). Defendants' suggestion that the D.C. long-arm statute alone would govern the analysis under D.C. law, Opp'n at 37-38, is incorrect because it fails to account in any way for the particular jurisdictional law that is applied in U.S. courts with respect to foreign sovereigns like Congo and CCA.

It is well-established that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.*, governs jurisdictional determinations with respect to foreign sovereign defendants in either federal or state court.  *See* 28 U.S.C. § 1605(a) (specifying circumstances in which a "foreign state shall not be immune from the jurisdiction of courts of the United States or of the States"); *Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)

(noting that the FSIA "bars federal and state courts from exercising jurisdiction when a foreign state is entitled to immunity").  None of the long-arm statute cases cited by Defendants involve foreign sovereigns—and for good reason.  The D.C. Circuit has specified that the FSIA provides the exclusive basis for jurisdiction over a foreign sovereign; constitutional "minimum contact" factors, as codified in state long-arm statutes, are not considered.  *See, e.g.*, *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005) ("We therefore reject the [defendant's] attempt to condition the jurisdiction of the courts of the United States upon the 'minimum contacts' . . . ; we hold the district court properly asserted jurisdiction over the [defendant] based solely upon the requirements of the FSIA."); *see also id.* at 299 ("[U]nder the FSIA, subject matter jurisdiction plus service of process equals personal jurisdiction[.]") (quoting *Practical Concepts, Inc. v. Rep. of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987)). Defendants' novel argument that the D.C. long-arm statute's minimum contacts analysis should govern the question of personal jurisdiction over Congo and CCA in England effectively imposes a higher jurisdictional standard for the foreign court proceeding than D.C. law itself requires.  There is no basis for this erroneously restrictive approach.

As Defendants have acknowledged, the FSIA provides for jurisdiction over a foreign sovereign defendant "in which the action is brought . . . to confirm an award made pursuant to an agreement to arbitrate."  28 U.S.C. § 1605(a)(6); *see also* Opp'n at 44 (quoting same).  Thus, just as English law allows for jurisdiction over a party outside of the forum in order to enforce an arbitral award, *see* Higham II ¶¶ 4-5 (citing English statutory provisions), the FSIA (as incorporated into D.C. law) provides for jurisdiction over foreign sovereigns to enforce an arbitral award even where the sovereign does not have "minimum contacts" with the forum. Accordingly, even if this Court were to look to the personal jurisdiction analysis under D.C.

law—and not English law, as the case actually requires—the Court must conclude that the English Court properly exercised personal jurisdiction over both Defendants.

Because the English Court had jurisdiction over both Defendants, and Defendants offer no other basis under the Recognition Act to refuse recognition, Defendants have failed to meet their burden, and the Court should recognize and enforce the English Judgment as a matter of law.

### D.      Enforcement Of The English Judgment Is Not Preempted By Federal Law

Failing to meet their burden to establish a basis for non-recognition of the English Judgment under the D.C. Recognition Act, Defendants instead reach for a novel argument of federal law preemption—an argument that Defendants acknowledge has already been rejected by all of the courts to consider it to date.  This Court should reject it as well.

### 1.      Defendants Ignore The Heavy Presumption Against Preemption

At the outset, Defendants fail to mention that "in all preemption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations and citations omitted); *see also Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law.").  As detailed below, the recognition of foreign judgments is one such area historically reserved to the states.  Thus, the so-called "presumption against preemption" applies.  *See Wyeth*, 555 U.S. at 565 n.3.

The central inquiry in the preemption analysis is whether Congress intended to displace state law.  *See, e.g.*, *id.* at 565 ("[T]he purpose of Congress is the ultimate touchstone in every pre-emption case.").  Moreover, while "Congress may withdraw specified powers from the

States by enacting a statute containing an express preemption provision," *Arizona v. United States,* 567 U.S. __, 132 S. Ct. 2492, 2500-01 (2012), the Supreme Court has acknowledged that the "FAA contains no express pre-emptive provision," and indeed does not even reflect "a congressional intent to occupy the entire field of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 (1989). Accordingly, Defendants are limited to arguing that this case falls into a subset of preemption cases that are predicated on a direct conflict between federal and state law. *See* Opp'n at 12. As the Supreme Court recently articulated in *Arizona v. United States*, this subset encompasses instances "where compliance with both federal and state regulations is a physical impossibility," and "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 132 S.Ct. at 2501 (internal quotations and citations omitted). The latter inquiry is informed by examining the federal law's "purpose and intended effects." *Id.*

It is clear that it is not a "physical impossibility" to comply with both the D.C. Recognition Act and the FAA in this case. Indeed, the FAA is not even implicated in Commisimpex's cause of action. *See* Am. Compl. Failing that test, for Defendants to overcome the presumption against preemption and establish that enforcement of the English Judgment is preempted by the FAA, Defendants must demonstrate that (i) Congress clearly and manifestly intended that the FAA regulate the enforcement of foreign judgments; and (ii) enforcement of the English Judgment stands as an obstacle to the purpose and intended effects of the FAA. Defendants do not, and cannot, show either.

2.     **Defendants Cannot Show That Congress Clearly Intended To Regulate Enforcement Of Foreign Judgments Under the FAA**

a.     **Enforcement Of Foreign Judgments Is A Matter Of State Law**

The presumption against state law preemption is based on "the historic presence of state law" and "does not rely on the absence of federal regulation."  *Wyeth*, 555 U.S. at 565 n.3.  It is indisputable that the field of foreign judgment enforcement has historically been occupied by the states.  For example, as noted in the Restatement (Third) of Foreign Relations:

> Since *Erie v. Tompkins*, 304 U.S. 64 (1938), it has been accepted that in the absence of a federal statute or treaty or some other basis for federal jurisdiction . . . recognition and enforcement of foreign country judgments is a matter of State law, and an action to enforce a foreign country judgment is not an action arising under the laws of the United States.  Thus, State courts, and federal courts applying State law, recognize and enforce foreign country judgments without reference to federal rules.

Restatement (Third) of Foreign Relations § 481, *cmt. a*; *see also Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 582 (2d Cir. 1993) ("[U]nlike the recognition of arbitral awards, which is governed by federal law, the recognition of foreign judgments is governed by state law.").

The D.C. Recognition Act, pursuant to which Commisimpex brings its claim, is modeled on the Uniform Foreign Money Judgments Recognition Act—itself a codification of longstanding state practice.  *See, e.g.*, *Society of Lloyd's v. Siemon-Netto*, 457 F.3d at 99 n.3; Restatement (Third) of Foreign Relations, Ch. 8, Introductory Note (noting that Uniform Act "codif[ied] State rules that had long been applied").  The Recognition Act thus continues the long tradition of state regulation in the area of foreign judgment enforcement.

**b.      The FAA Applies Only To Enforcement of Arbitral Awards— Not Foreign Judgments**

Far from a clear and manifest intent, **no** intent of Congress to displace state law on foreign judgment enforcement may be discerned under the FAA.  In fact, the plain language of the FAA and its legislative history clearly indicate that the FAA—including in particular Chapter 2, implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention")—applies only to the enforcement of foreign arbitral awards, and not foreign judgments.

The FAA contains no language supporting the conclusion that it was intended to apply to foreign judgments.  Even Defendants do not suggest that such statutory language exists.  To the contrary, by its plain terms, the FAA explicitly applies only to arbitration agreements or arbitral awards—and even then, under Chapter 2, generally only to agreements or awards that are not between citizens of the United States.  9 U.S.C. § 202 ("An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not . . . falls under the Convention."); *id.* ("An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not fall under the Convention . . . .").  The only court judgment contemplated by Chapter 2 is the "order confirming the award"—*i.e.*, the judgment entered by the enforcing U.S. court, not a foreign court.  9 U.S.C. § 207.[2]

Consistent with the FAA's narrowly defined application to arbitration agreements and awards, the Supreme Court has ruled on several occasions—including in *Marmet Health Care Ctr., Inc. v. Brown*, on which Defendants rely—that the FAA preempts state laws that hinder a

---

[2] The text of Chapter 1 of the FAA, governing domestic awards, similarly demonstrates that Congress was conscious of the distinction between an arbitral award and a court judgment to enforce the award.  Under Section 9, "an order confirming the award" may be made only when "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award." 9 U.S.C. § 9; *see also Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1319 (2d Cir. 1973) (noting "[i]t is not insignificant that the [FAA] itself makes a very clear distinction between action on an award and action on a judgment enforcing the award").

party's access to arbitration.  *See, e.g.*, *Marmet*, 565 U.S. ___, 132 S. Ct. 1201, 1203-04 (2012) (*per curiam*) (West Virginia law prohibiting pre-dispute arbitration agreements in wrongful death claims); *Perry v. Thomas*, 482 U.S. 483, 491 (1987) (California labor law allowing wage collection actions to proceed in a judicial forum without regard to existence of a private agreement to arbitrate).   Defendants' indiscriminate claim that "the Supreme Court has repeatedly held" that the FAA preempts state law, Opp'n at 12, ignores the basic fact that such decisions were rendered in an arbitration-specific context, consistent with the FAA's arbitration-specific language and purpose.

The legislative history likewise offers no support for the idea that Congress intended in any way for the FAA to regulate enforcement of foreign judgments.  Defendants focus on an excerpt of the legislative history regarding the statute of limitations period under FAA Chapter 2—which, notably, accounts for the unique circumstances for enforcement of international awards necessitating more time than a domestic award, as witnessed in this case. *See* Opp'n at 18.  Defendants ignore far more relevant material evidencing that Congress had specifically considered, and sought to avoid, the displacement of state law by FAA Chapter 2. This is demonstrated, in particular, by an exchange between a member of the State Department's Office of the Legal Adviser, and the Chairman of the Senate Committee on Foreign Relations:

> Chairman: ***Does this legislation have any effect whatever on State laws***?
>
> Mr. Kearney: No, Mr. Chairman, it does not.  It concerns in effect solely the jurisdiction of the Federal district courts.
>
> Chairman: ***And it does not alter or change a citizen's rights under State law***s?
>
> Mr. Kearney: Not at all.
>
> Chairman: ***Does it in any way broaden Federal authority***?
>
> Mr. Kearney: Not basically.
>
> ….

> Chairman: So there is **no possible opposition based upon the idea we are now reaching out and subjecting citizens to further arbitrary intervention of the Federal authorities** or any other authorities in their private affairs.  That is not justified; is that correct?
>
> Mr. Kearney: That is correct.

S. Rep. No. 91-702, 91st Cong. 2d Sess. at 10 (1970) (emphasis added).

Absent any indication—let alone a "clear and manifest" indication—in the FAA's statutory language or legislative history that Congress intended to preempt the state law of foreign judgment recognition, the presumption against preemption holds true and forecloses Defendants' preemption challenge.

### c.    Defendants' Interpretation Of The FAA Is Contrary To Well-Established And Well-Reasoned Case Law

Further underscoring the invalidity of Defendants' preemption argument, all courts that have addressed the issue to date have ruled in favor of the enforceability (under state law) of a foreign court judgment confirming an arbitral award—as Defendants themselves acknowledge. Opp'n at 31-32.  Such rulings have been rendered predominantly in the Second Circuit, which has long been recognized as a leader in international commercial and arbitration law, given New York's prominence in both fields.

In a leading case decided shortly after passage of the FAA, *Island Territory of Curacao v. Solitron Devices*, the Second Circuit explicitly held that the FAA does not preempt state law on the recognition of foreign judgments:

> **[S]ince the Convention on Recognition itself and its enforcing [FAA] legislation go only to the enforcement of a foreign arbitral award and not to the enforcement of foreign judgments confirming foreign arbitral awards, New York state law is not preempted** to the extent that it permits, regulates and establishes a procedure for the enforcement of the foreign money judgment. Thus it cannot be doubted that the policy of New York State to

–15–

recognize foreign judgments "prevails in the absence of interference with the federal regulatory scheme."

*Solitron*, 489 F.2d 1313, 1319 (2d Cir. 1973) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117 (1973)) (emphasis added); *see also Solitron*, 489 F.2d at 1318 ("The Convention on Recognition in no way purports to prevent states from enforcing foreign money judgments, whether those judgments are rendered in the enforcement of an arbitration award or otherwise."). Further to this reasoning, the Second Circuit recognized a foreign court judgment rendered in Curacao—even while acknowledging the possibility that the underlying arbitral award might not actually be enforceable. *Solitron*, 489 F.2d at 1318 n. 4.

Defendants' assertion that *Solitron* is somehow inconsistent with "subsequent" Supreme Court precedent is wholly off-base. The *Arizona* standard cited by Defendants is not novel; it is a direct recitation of a standard first announced by the Supreme Court in 1941. *See Arizona*, 132 S. Ct. at 2501 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Moreover, the *Solitron* decision specifically relied on the still-valid preemption analysis of *Merrill Lynch v. Ware*, a case in which the Supreme Court focused properly on the intent of Congress to displace regulation in a field traditionally governed by state law. *See Solitron*, 489 F.2d at 1319 (citing *Merrill Lynch*).

In the forty years that *Solitron* has endured, courts have continued to recognize the distinction between foreign arbitral awards (which are enforceable under the FAA) and foreign court judgments based on awards (which are enforceable under state law). *See, e.g.*, *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 29 F.3d 79 (2d Cir. 1994) (enforcing under New York law a French judgment based on arbitral award ***after*** FAA statute of limitations had run on arbitral award); *Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 n.2 (2d Cir. 1987) ("Federal law pertinent to the [New York] Convention is inapplicable because the Convention does not apply to the enforcement of

judgments that confirm foreign arbitration awards."); *Fotochrome, Inc. v. Copal Co., Ltd.*, 517 F.2d 512, 519 (2d Cir. 1975) ("[The district court] was right in concluding that the Japanese arbitral award may not itself be treated as a foreign money judgment."); *Ocean Warehousing B.V. v. Baron Metals and Alloys, Inc.*, 157 F. Supp. 2d 245 (S.D.N.Y. 2001) (enforcing under New York law a Dutch judgment based on an arbitral award); *see also Everplay Installation Inc. v. Guindon*, 471 Fed. App'x. 812 (10th Cir. 2012) (affirming judgment in case where the lower court applied FAA statute of limitations to enforcement of foreign award and, separately, state law statute of limitations to enforcement of foreign judgments confirming the award).   As Defendants also must concede, the District Court for the District of Columbia has already recognized at least one such foreign judgment, separate and apart from the foreign arbitral award upon which it was based.   *See Continental Transfer Technique, Ltd. v. Fed. Gov't of Nigeria*, 800 F. Supp. 2d 161, 164-65 (D.D.C. 2011) (enforcing under the D.C. Recognition Act an English judgment based on an arbitral award).

Defendants' attempt to distinguish *Solitron* and *Seetransport* on the basis that they involved foreign judgments confirming an award in the jurisdiction where the award was rendered—the so-called "primary" jurisdiction under the New York Convention framework— also has no bearing here.   In fact, the distinction between "primary" and "secondary" jurisdictions for award enforcement under the New York Convention only underscores the entirely separate regime that is in place for judgment enforcement under state law.   The *Karaha Bodas* cases, international conventions, and foreign court cases cited by Defendants stand for the widely recognized (and undisputed) principle that a U.S. court may only deny recognition of a foreign arbitral award on the basis of the factors set forth in Article V of the New York Convention—and is not bound in this respect by the determinations of a foreign court.   *See*

Opp'n at 20-25.  Commisimpex's cause of action does not call for this Court to accord preclusive effect to the English Court's determinations on the Award under the New York Convention, but rather for the Court to independently assess the English Judgment under the separate (and clearly distinct) factors for judgment recognition under District of Columbia law.[3]  *Compare* New York Convention, Art. V *with* D.C. Code §15-364.

In sum, *every* court to have considered the issue has found that the FAA applies only to the enforcement of arbitral awards, not foreign judgments.  Because Defendants do not, and cannot, show that Congress clearly and manifestly intended to regulate foreign judgments under the FAA, there is no argument that recognition of a foreign judgment falling outside the FAA can be preempted by the FAA.

### 3.     Enforcement Of The English Judgment Is Consistent With The Purposes And Objectives of Congress

The presumption against preemption also is not overcome in this case because enforcement of the English Judgment would not be "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" under the FAA.  *Arizona*, 132 S.Ct. at 2501.   To the contrary, enforcement of the English Judgment will further the principal underlying purposes of the FAA—*i.e.*, the recognition and enforcement of mutually agreed-upon arbitration agreements, and the promotion of international dispute resolution.  *See, e.g., Scherck v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.15 (1974) ("The goal of the [New York] Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international

---

[3] That the Judgment rendered by the "secondary jurisdiction" English Court was, in effect, a summary affirmance of the Award also is irrelevant.  *See* Opp'n at 20-25.  The Recognition Act provides for recognition of foreign money judgments, without regard for the length of the proceedings giving rise to them.  *See* D.C. Code § 15-363; *see also* Restatement (Third) Foreign Relations § 481, *cmt. i* (noting that "[n]either the Uniform Foreign Money Judgments Recognition Act nor this Restatement distinguishes between [enforcement of] contested and default judgments").

contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."); *Termorio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) (noting that the "Convention's purpose was to encourage the recognition and enforcement of commercial arbitration agreements," and that its "utility . . . [is] in promoting the process of international commercial arbitration") (internal quotations and citations omitted).

As Defendants readily admit, Congress elected a three-year statute of limitations under the FAA in order to afford ***greater*** opportunities to parties trying to enforce international awards. *See* S. Rep. No. 91-702, 91st Cong., 2d Sess. at 8 (1970) ("In many cases enforcement [of an arbitral award] would normally be sought outside the United States as a first step. . . . It was . . . essential to allow time for these initial enforcement efforts outside the United States."); *see also* Opp'n at 18 (discussing same). Enforcement of the English Judgment within the applicable statute of limitations for that action under the D.C. Recognition Act would not frustrate the full purposes of Congress to promote the recognition of arbitration agreements and the resolution of international commercial disputes. If anything, enforcement here would help combat award evasion by a non-paying State in violation of its agreements, and eliminate further delays and costs. *See Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 665 (2d Cir. 1997) (noting that FAA was enacted "as a means to reduce the costliness and delays of litigation") (internal quotations omitted).

Although not relevant to the Court's determination, Defendants also incorrectly assert that Commisimpex has obtained the English Judgment for no purpose other than to bring a Recognition Act claim in the United States. *See* Opp'n at 26. Defendants know better. As Commisimpex clearly explained in its Response to Defendants' Interrogatories—which

Defendants themselves entered into the record as an exhibit to their opposition brief—Commisimpex is actively seeking payment on the English Judgment in England, as well as seeking enforcement of the 2000 Award in other jurisdictions.  Commisimpex's Objections and Answers to Defendants' First Set of Interrogatories dated Aug. 1, 2012 at 5-6 & Exh. 1 (submitted by Defendants as B. Morag Decl. Exh. C); *see also* Higham II ¶ 7 (confirming that the English action was initiated "with a view to enforcing the High Court's Judgment in England, as and when relevant assets could be identified," and that ongoing enforcement efforts have been disclosed to Defendants).

Ultimately, Commisimpex seeks the successful (and final) resolution to this international dispute that both the arbitral tribunal and English Court sought to award to it—in whatever jurisdictions that end may be realized.  The present judgment enforcement action is simply one component of Commisimpex's decade-long efforts to recoup in good faith the tens of millions of dollars, euros, pounds, and francs that Defendants have never paid.

### E.    Commisimpex Is Entitled To Prejudgment Interest

Commisimpex raised the issue of prejudgment interest both in its Amended Complaint and in its opening brief.  Am. Compl. ¶ 24(e) & Prayer for Relief ¶ 1(e); Mot. at 5-6.  Defendants argue that Commisimpex has not raised the prejudgment interest issue in "the proper way." Opp'n at 40.  However, as Defendants themselves acknowledge, this argument has no bearing on the enforceability of the English Judgment, and thus cannot preclude summary judgment in this case.  *See id.* (arguing that the Court could "limit any ruling it makes . . . to whether the English Order may be recognized by this Court").[4]

---

[4] Further, in both cases on which Defendants rely, the courts granted judgment to enforce an award and/or judgment enforcing an award, and later provided for the possibility that the parties brief the issue of prejudgment interest in greater detail.  *See G.E. Transport S.p.A. v. Rep. of Albania*, 693 F. Supp. 2d 132, 140-41 (D.D.C. 2010) (granting default judgment to enforce arbitral award and holding that "[t]he court is persuaded that an award of prejudgment

Moreover, Defendants gloss over the proper application of D.C. Code Section 15-108 when suggesting that Commisimpex has not articulated equitable considerations warranting an award of such interest.   D.C. federal and state courts both apply Section 15-108 to award prejudgment interest.   *See* D.C. Code § 15-108 (providing for application in "an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia"); *see also, e.g.*, *Compagnie des Bauxites de Guinee v. Hammermills, Inc.*, 1992 WL 122712, at *8-9 (D.D.C. May 29, 1992) (confirming foreign arbitral award and awarding interest, pursuant to § 15-108, from the date of the award).   Under this statutory provision, an award of prejudgment interest is ***mandatory*** where the judgment is for a liquidated debt and interest is payable by contract or by law or usage.   *See* D.C. Code § 15-108 (providing that "judgment for the plaintiff ***shall*** include interest") (emphasis added); *see also Williams Enterprises, Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230, 238 (D.C. Cir. 1991) (noting that D.C. law "unequivocally allows prejudgment interest in contract actions"); *Athridge v. Iglesias*, 382 F. Supp. 2d 42, 49-54 (D.D.C. 2005) (reviewing mandatory bases for prejudgment interest under Section 15-108—before discretionary bases—and collecting D.C. state law cases).

Defendants do not dispute that this proceeding to enforce the English Judgment is an "action . . . to recover a liquidated debt."   D.C. Code § 15-108.   Nor do they dispute that they are contractually obligated to pay interest to Commisimpex under the terms of the promissory notes (by contract) or the terms of the English Judgment (by law or usage).   Therefore, Commisimpex should be awarded prejudgment interest as a matter of law.

---

interest in this case would be fully consistent with the accepted purposes of such an award," but denying "without prejudice" the request for prejudgment interest due to need for further briefing); *Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 286 (D.D.C. 2012) (following grant of summary judgment, "hold[ing] in abeyance" the prejudgment interest request until further party briefing).

The conclusion is the same when looking to equitable considerations, as Defendants urge. Among other discretionary factors for awarding prejudgment interest, courts consider unreasonable delays in dispute resolution on account of actions by the defendant. *See, e.g.*, *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 265 (D.C. Cir. 2008) (finding that an award of "prejudgment interest [was] particularly appropriate in this case because of the substantial delay in judgment for these plaintiffs caused by Libya's persistent delay tactics over the course of this litigation"); *Oldham v. Korean Air Lines Co*., 127 F.3d 43, 54 (D.C. Cir. 1997) (noting that "[t]he purpose of [prejudgment interest] awards is to compensate the plaintiff for any delay in payment resulting from the litigation").

In this case—as the undisputed record establishes—Defendants have failed to pay their debt to Commiximpex for decades, and have forced Commisimpex to circumnavigate the globe attempting to recover on the twelve-year-old Award and related debts.  Accordingly, under either the mandatory statutory basis or a discretionary basis, Commisimpex should be awarded prejudgment interest, and reserves the right to brief the calculation of the appropriate amount to be awarded, along with costs and fees, following a grant of summary judgment.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Commisimpex's memorandum of points and authorities in support of its summary judgment motion, the Court should grant Commisimpex's motion and the relief requested therein, and enter judgment recognizing and enforcing the English Judgment against Defendants Congo and CCA.

Dated: Washington, D.C.                                   Respectfully submitted,
      October 5, 2012

**WHITE & CASE**LLP

/s/ Francis A. Vasquez, Jr.
Francis A. Vasquez, Jr. (D.C. Bar No. 442161)
Jonathan C. Ulrich (D.C. Bar No. 500832)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for Commissions Import Export, S.A.*