## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| COMMISSIONS IMPORT EXPORT S.A., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil No. 12–743 (RCL) ) |
| THE REPUBLIC OF THE CONGO AND CAISSE CONGOLAISE D'AMORTISSEMENT, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

Plaintiff Commissions Import Export ("Commisimpex") has uncovered a procedural loophole in Chapter 2 of the Federal Arbitration Act ("FAA Ch. 2"), 9 U.S.C. §§ 201 *et seq*. Its attempt to exploit this loophole raises a question of first impression in this Circuit: whether FAA Ch. 2's three-year statute of limitations on confirmation actions for foreign arbitral awards, 9 U.S.C. § 207, preempts a plaintiff from using the District of Columbia's Uniform Foreign-Country Money Judgments Recognition Act ("D.C. Recognition Act"), D.C. Code §§ 15–361 *et seq.*, to obtain a U.S. Court Judgment enforcing a foreign Judgment which enforces an otherwise stale foreign arbitral award. Now before the Court is Commisimpex's motion for summary Judgment. ECF No. 37. Upon consideration of plaintiff's motion, defendants' opposition, ECF No. 39, plaintiff's reply, ECF No. 40, applicable law, and for reasons given below, the Court finds that this maneuver is preempted, and will DENY plaintiff's motion and DISMISS plaintiff's action with prejudice.

I.   **BACKGROUND AND PROCEDURAL HISTORY**[1]

This case arises out of a dispute over the repayment of debts owed under contracts between Commisimpex and defendant the Republic of the Congo ("Congo"). Pl.'s Statement of Material Facts ("Pl.'s Statement") ¶ 2, ECF No. 37–1; Defs.' Statement of Material Facts ("Defs.' Statement") ¶ 2, ECF No. 39–1.

A.   **The 1992 Agreement**

In 1992 the parties entered an agreement for the repayment of certain outstanding debts under these contracts providing for arbitration under the Rules of the International Chamber of Commerce ("ICC"). Pl.'s Statement ¶¶ 3–4; Defs.' Statement ¶¶ 3–4. Pursuant to the 1992 agreement, defendant Caisse Congolaise d'Amortissement ("CCA"), a department of the Congo's Ministry of Economy, Finance and Planning, drew up promissory notes endorsed in favor of Commisimpex, and the Congo issued a series of commitment letters agreeing to submit disputes arising under the notes to arbitration in Paris, France, under rules of the ICC. Pl.'s Statement ¶¶ 5–6; Defs.' Statement ¶¶ 5–6.

B.   **The 2000 Arbitral Award**

The Congo failed to satisfy its obligations under the 1992 agreement. Pl.'s Statement ¶ 7; Defs.' Statement ¶ 7. Commisimpex commenced arbitration in Paris with the ICC naming Congo and CCA as respondents. Pl.'s Statement ¶¶ 7–8; Defs.' Statement ¶¶ 7–8. Congo and CCA defended against the arbitration, which resulted in an arbitral award of over $31 million in Commisimpex's favor. Pl.'s Statement ¶ 9; Defs.' Statement ¶ 9; *see also* Enforceable Copy of an Arbitration Award ("Award"), Dec. 7, 2000, Amended Compl., Ex. A, ECF No. 35–1.

---

[1] For additional background, see *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 11-cv-6176, 2012 WL 1468486 at *1 (S.D.N.Y. Apr. 27, 2012).

### C. The 2009 English Court Judgment

The Congo failed to satisfy the 2000 award. Pl.'s Statement ¶ 12; Defs.' Statement ¶ 12. Roughly nine years later, Commisimpex sought to enforce the Judgment in the Queen's Bench Division of the High Court of Justice, Commercial Court in London, England. Pl.'s Statement ¶¶ 12–13; Defs.' Statement ¶¶ 12–13. In July 2009 the English Court entered Judgment enforcing the 2000 award, and augmented the amount of the award with additional "penalty interest" and other costs. Pl.'s Statement 14–15; Defs.' Statement 14–15; *see also* Order, *Commissionss Import Export S.A. v. Republic of the Congo*, High Court of Justice, Queen's Bench Division, Commercial Court, 2009 Folio 804, July 10, 2009, Ex. B, Amended Compl. ECF No. 35–2. This Judgment was subsequently amended and reduced to account for Commisimpex's successful seizure of assets elsewhere. *See* Pl.'s Statement ¶ 21; Order, *Commissions Import Export S.A. v. Republic of the Congo*, High Court of Justice, Queen's Bench Division, Commercial Court, 2009 Folio 804, Nov. 3, 2011, Ex. C, Amended Compl. ECF No. 35–3.

### D. The Present Case

Two years later, and more than a decade after the 2000 award, Commisimpex filed an action in the Southern District of New York seeking "recognition of the English Judgment . . . pursuant to the Foreign Sovereign Immunities Act and the New York Uniform Foreign Country Money Judgments Recognition Act," N.Y. C.P.L.R. §§ 5301–5309 (McKinney). *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 11–cv–6176, 2012 WL 1468486 at *1 (S.D.N.Y. Apr. 27, 2012); *see also* Compl., Sept. 2, 2011, ECF No. 1. Judge Keenan found venue improper and transferred the case to this district. *Commissions Imp. Exp. S.A.*, 2012 WL 1468486 at *6.

After transfer, Commisimpex filed an amended and supplemental complaint, seeking recognition of the 2009 English Judgment under the D.C. Recognition Act, D.C. Code §§ 15–

361, *et seq.*; Amended Compl., June 22, 2012, ECF No. 35.[2]  Commisimpex does not rely on the FAA because, as it concedes, "any claim to enforce the Award directly would be time-barred by operation of 9 U.S.C. § 207."  Pl.'s Mot. 14.

## II.     ANALYSIS

### A.     Summary Judgment Legal Standard

Summary Judgment is "appropriate where the pleadings and the record 'show that there is no genuine issue as to any material fact and that the moving party is entitled to Judgment as a matter of law.'"  *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 941 (D.C. Cir. 2007) (quoting *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1041 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 56(c))).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Actions to enforce foreign Judgments under the D.C. Recognition Act are appropriately resolved on summary Judgment.  *See, e.g.*, *Cont'l Transfert Technique, Ltd. V. Fed. Gov't of Nigeria*, 800 F. Supp. 2d 161, 164–65 (D.D.C. 2011).

### B.     Defendants Expressly Waived Sovereign Immunity

Foreign states are "immune from the jurisdiction of the courts of the United States and of the States" except as provided in the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1604.  A "foreign state" within the meaning of FSIA is immune from this Court's jurisdiction unless one of the statute's enumerated exceptions applies.  *Samantar v. Yousuf,* 130 S. Ct. 2278, 2285 (2010).  FSIA is the "sole basis for obtaining jurisdiction over a foreign state in federal court."  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989).

A "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state" and the Act defines the latter as "any entity . . . which is an

---

[2]  The case was subsequently reassigned by consent from Judge Jackson to the undersigned judge.  ECF No. 42.

organ of a foreign state or political subdivision thereof." § 1603 (a)–(b).  In the present case, it is undisputed that Congo is a foreign state and CCA is an agency or instrumentality of a foreign state.  *See* Am. Supplemental Compl. ¶ 5; Answer to Am. Supplemental Compl. ¶ 5.  Accordingly, FSIA gives the "sole basis" for jurisdiction over both defendants.  *See Argentine Rep.*, 488 U.S. at 439.

FSIA provides that "a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication . . . ." § 1605(a)(1).  Commisimpex argues, and defendants concede, that defendants explicitly waived their immunity to suit in their 1992 agreement.  Pl.'s Mot. 7–12; Defs.' Opp'n 41.  Commisimpex points to the following language which appears in each of defendants' 1992 commitment letters:

> This undertaking is considered as a commercial instrument governed by commercial law and is constituted for commercial purposes.  It follows that the signatory hereof irrevocably and on a final basis waives the right to invoke any immunity from legal proceedings as well as any immunity from execution in the context of the settlement in the context of the settlement of a dispute relating to the undertakings which are the subject hereof.

Pl.'s Mot. 9; Pl.'s Statement ¶ 6 (citing Commitment Letters Nos. 75, 78, 85, 88, 95, 99, 105 & 108, ECF Nos. 37–21, 37–22, 37–23, 37–24, 37–25, 37–26, 37–27 & 37–28).  This language expressly waives defendants' sovereign immunity pursuant to § 1605(a)(1).  Moreover, defendants concede that they waived their sovereign immunity and "do not deny that this Court has jurisdiction to adjudicate Commisimpex's cause of action for recognition of the English Order . . . ." Defs.' Opp'n 41.  The Court has subject matter jurisdiction.[3]

---

[3] Commisimpex also raises numerous alternative grounds for jurisdiction and waiver of immunity. See Pl.'s Mot. 6–16.  Having found jurisdiction, the Court will not pursue these alternative theories.

### C. FAA Ch. 2 Preempts Commisimpex's Maneuver

Commisimpex's sole cause of action relies on the D.C. Recognition Act, D.C. Code §§ 15–361, *et seq.*; *see* Am. Supplemental Compl. ¶¶ 19–24, which requires courts in the District of Columbia to "recognize a foreign-country Judgment" as long as it "[g]rants or denies recovery of a sum of money," is "Final," "Conclusive," and "Enforceable" "[u]nder the law of the foreign country where rendered," and certain additional conditions are met. *See, e.g.*, D.C. Code §§ 15–363, 364(a)–(b). Commisimpex argues that this obligates the Court to enforce the 2009 English Judgment enforcing the 2000 Award. *See* Amended Compl. ¶¶ 2, 20–22.

Defendants insist that the 2009 English Judgment fails to meet certain statutory conditions, *see* Def.'s Opp'n 35–38, but the Court need not address these issues. Assuming all statutory conditions were satisfied, enforcement of the 2009 English Judgment under the D.C. Recognition Act is preempted because it would create "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" as expressed in FAA Ch. 2. *See Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012).

### 1. "Purposes and Objectives" Preemption

The Supremacy Clause of the U.S. Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. "[S]tate laws are preempted when they conflict with federal law." *Arizona*, 132 S. Ct. at 2501. Such a conflict arises, inter alia, where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 132 S. Ct. at 2501 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). "What is a

sufficient obstacle is a matter of Judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). "[T]he entire scheme of the statute must . . . be considered and that which needs must be implied is of no less force than that which is expressed." *Id.* (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912).

For instance, in *Arizona v. United States*, the Court held that a federal law governing the employment of illegal aliens preempted an Arizona provision making it a criminal offense for an unauthorized alien to work in Arizona. 132 S. Ct. at 2503–04. The federal scheme included an escalating series of civil and criminal penalties for employers of illegal aliens but did not impose any criminal penalties on the aliens. *Id.* at 2504. The Court looked to the "text, structure, and history" of the federal statute and concluded that "Congress decided it would be inappropriate to impose criminal penalties on aliens who seek or engage in unauthorized employment." *Id.* at 2504–05. Accordingly, the Arizona statute "involve[d] a conflict in the method of enforcement" and was held preempted. *Id.* 2505.

In contrast, in *Wyeth v. Levine*, the Court found that the federal Food and Drug Administration's approval of a drug and its label's warnings did not preempt a tort claim against the drug company based on failure to warn. 555 U.S. 555 (2009). The drug company defendant argued that Congress had intended to create "both a floor and a ceiling" for drug regulation, but the Court's survey of the long history of Congress's legislation in this arena found no support for this characterization. Congress legislated as it did only "to bolster consumer protection against harmful products." It "did not provide a federal remedy for consumers harmed by unsafe or ineffective drugs" because "it determined that widely available state rights of action" such as the one pursued by plaintiff in the case "provided appropriate relief for injured consumers." *Id.* at

7

574. Moreover, the Court noted that Congress enacted an express preemption provision in the related arena of medical device tort suits, but had never, in the long history of regulation in this arena, enacted such a provision for drug tort suits, and concluded that Congress's "silence on the issue, coupled with its certain awareness of the prevalence of state tort litigation, [was] powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness." *Id.* at 575.

Before addressing the central question—i.e. whether FAA Ch. 2 preempts Commisimpex's maneuever—this opinion first turns to provide a brief overview of that legislation and the Convention it implemented.

### 2. FAA Ch. 2

The New York Convention was adopted in 1958 to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520 (1974); *see also* Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), T.I.A.S. No. 6997, 21 U.S.T. 2517, 1970 WL 104417. "The Convention provides a carefully crafted framework for the enforcement of international arbitral awards." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007). Two Articles are of particular relevance here. First, Article III subjects recognition of international arbitral awards to the "rules of procedure" of the territory in which recognition is sought.[4] New York Convention, Article III, T.I.A.S. No. 6997, 21 U.S.T. 2517, 1970 WL 104417; *see also TermoRio*, 487 F.3d at 934. Second, Article XI authorizes contracting federal or non-unitary states to choose to either

---

[4] Commisimpex does not dispute that statutes of limitations qualify as "rules of procedure" duly enacted under the Convention. *See* Pl.'s Mot. 14 (conceding that "any claim to enforce the Award directly would be time-barred by operation of 9 U.S.C. § 207.").

8

implement the convention at the federal level or at the sub-national (i.e. state or province) level. *See* New York Convention Article XI.

The Convention was made enforceable in the United States in 1970 through the enactment of enabling legislation, codified as Chapter 2 of the FAA. *See* Act To Implement the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Pub. L. 91–368, July 31, 1970, 84 Stat. 692 (codified at 9 U.S.C. §§ 201–208) ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter," § 201); *see also Medellin v. Texas,* 552 U.S. 491, 521 (2008) (citing this for the proposition that "Congress knows how to accord domestic effect to international obligations when it desires such a result").

By acting at the federal level, Congress ensured that the enforcement of foreign arbitral awards in the United States would be governed by one set of uniform "rules of procedure," rather than a diversity of state ones as might have occurred pursuant to Article XI. *Cf. Yugraneft Corp. v. Rexx Mgmt. Corp.*, [2010] S.C.R. 649, para. 39 (Can.) (applying the province of Alberta's statute of limitations period for the confirmation of a New York Convention award).

Congress also adopted a "rule of procedure" pursuant to Article III:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207. "Courts addressing claims under the Arbitration Act have construed Section 207 to be a statute of limitations." *Flatow v. Islamic Republic of Iran*, 76 F. Supp. 2d 28, 29 (D.D.C. 1999) (collecting cases); *see also id.* (finding an award not confirmed within three years to be "null and void"). Congress chose to impose a longer period for parties to seek enforcement of

9

<␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊␊

New York Convention awards than it already had in place for confirmation of *domestic* arbitral awards. *See* 9 U.S.C. § 9 (one-year statute of limitations for confirmation of domestic awards). Notably, the three-year period Congress settled on is far shorter than that imposed by many other contracting states, some of which have no limitation period whatsoever. *See, e.g.*, ICC, International Court of Arbitration Bulletin: Guide to National Rules of Procedure for Recognition and Enforcement of New York Convention Awards, app. D (2008 Special Supplement) (listing the statutes of limitations for signatory states).

### 3. Commisimpex's Maneuver Would Obstruct Congressional Purposes and Objectives Implicit in FAA Ch. 2

The case hinges on whether Congress, when it enacted this legislation to enforce the New York convention at the federal level and restricted the Convention's applicability to actions brought within three years of foreign arbitral awards, did so with any "purpose[] or objective[]" which would be unduly obstructed by Commisimpex's attempt to enforce a foreign *Judgment* enforcing an otherwise untimely foreign arbitral *award*. *See Arizona*, 132 S. Ct. at 2501. This Court finds two such purposes implicit in the statutory scheme, both of which reflect a Congressional objective to protect the procedural interests of potential confirmation action defendants.

(a) *Procedural Uniformity*: "The [New York] Convention provides a carefully crafted framework for the enforcement of international arbitral awards." *TermoRio*, 487 F.3d at 935. Congress chose to make that "carefully crafted framework" applicable in this country's courts by enacting enabling legislation at the federal label, with uniform federal procedures to govern the statute of limitations period, rather than allowing each state to determine individually the extent to which it would recognize foreign arbitral awards. This choice evinces an interest in procedural uniformity.

Commisimpex's maneuver would obstruct this interest in uniformity by outsourcing the determination of timeliness to states and foreign parties. Here, for example, Commisimpex relies on the D.C. Recognition Act, which imposes a statute of limitations measured by the earlier of "the time during which the foreign-country Judgment is effective in the foreign country or 15 years from the date that the foreign-country Judgment became effective in the foreign country." D.C. Code § 15–369; *cf.* Pl.'s Mot. 13 n.10 (misstating the statute of limitations as "so long as the Judgment remains in effect in the foreign country"). And in their initial filing in the Southern District of New York, Commisimpex relied on a different, New York State law, which imposes only the timeliness requirement of the foreign states where the Judgment was issued. *See* N.Y. C.P.L.R. § 5302 (McKinney) (limiting recognition to Judgments which are, inter alia, "enforceable where rendered"). Future litigants in Commisimpex's position might well pursue analogous causes of action in still other U.S. states and based on Judgments from other foreign states with potentially different limitations periods. The result: instead of a single, uniform three-year limitations period, defendants would face a multitude of diverse limitations. Commisimpex's maneuver therefore frustrates Congress's objective in promoting procedural uniformity.

(b) *Finality*. At the same time Congress chose to implement the New York Convention it also chose to limit its applicability by imposing a three-year statute of limitations on confirmation actions. *See* 9 U.S.C. § 207. This choice evinces a purpose of protecting potential defendants' interest in finality. "[S]tatutes of limitations are designed . . . to promote finality, repose, and the efficient and prompt administration of justice." *AKM LLC dba Volks Constructors v. Sec'y of Labor*, 675 F.3d 752, 767 (D.C. Cir. 2012); *see also Carter v. Washington Metro. Area Transit Auth.*, 764 F.2d 854, 857 (D.C. Cir. 1985) ("[Statute of

limitations] periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary. Remedies for resulting inequities are to be provided by Congress, not the courts." (quoting *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947)).

Commisimpex's maneuver would interfere with this interest in finality by enabling foreign-award holders to circumvent Congress's time-limit. A party holding a stale but otherwise valid foreign arbitral award might breathe new life into his U.S. confirmation claim by obtaining Judgment enforcing the award in one of the many foreign jurisdictions that adopted a longer statute of limitations period than provided in § 207—or in one of the several jurisdictions which have no statute of limitations—and then proceeding under a U.S. state recognition law. This would potentially eviscerate the protection Congress enacted through § 207 for many award confirmation defendants. Such a result would upset the balance between promoting arbitration, on the one hand, and protecting potential defendendants' interest in finality that Congress struck in the 1970 enabling legislation.

Because the maneuver would obstruct these two Congressional objectives, it violates the Supremacy Clause and is preempted.

### 4. Commisimpex's Arguments Against Preemption Fail

Commisimpex argues that Congress's "principal" purpose in enacting the 1970 enabling legislation was to promote "the recognition and enforcement of mutually agreed-upon arbitration agreements, and the promotion of international dispute resolution," Pl.'s Reply 18, and that its maneuver *furthers* that purpose, since it "would help combat award evasion . . . and eliminate further delays and costs." Pl.'s Reply 19. But had Congress been solely concerned with maximizing the enforceability of foreign arbitral awards, it would not have imposed a time-limit

as it did in § 207. As shown above, Congress's actions show that it was interested *both* in promoting arbitration *and* protecting potential award confirmation defendants' interests in procedural fairness. Because Commisimpex's maneuver undermines these latter interests, it is preempted.

Commisimpex further argues that the FAA "contains no language supporting the conclusion that it was intended to apply to foreign *judgments*." Pl.'s Reply 13 (emphasis added). But the inquiry here is to decipher Congress's "purposes and objectives" in order to determine whether these would be frustrated by Commisimpex's maneuver and this requires interpreting the full scheme Congress chose to enforce the New York Convention not merely reading each word of the statute in isolation. *See Crosby*, 530 U.S. at 373 (The determination of "[w]hat is a sufficient obstacle" for purposes of preemption "is a matter of Judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."). Though it is true that FAA Ch. 2 does not by its own explicit terms prohibit Commisimpex's maneuver, a fair reading the statutory regime evinces Congressional purposes of procedural uniformity and finality for defendants, both of which would be undermined by the maneuver. *See Crosby*, 530 U.S. at 373 (in evaluating whether a federal statute has preemptive effect, "the entire scheme of the statute must . . . be considered and that which needs must be implied is of no less force than that which is expressed." (quoting *Savage*, 225 U.S. at 533)).

Moreover, Commisimpex's argument from statutory silence is weaker than that advanced and accepted by the Court in *Wyeth*. In that case, the Court found that Congress did not preempt a state tort claim where it had failed to expressly preempt such a claim over a long period, where it had "certain awareness of the prevalence" of such claims, and where it had also preempted a closely related set of tort claims. *Wyeth*, 555 U.S. at 575. Unlike *Wyeth*, where Congress was

aware of state tort suits and maintained longstanding silence as to the preemption of those suits by federal drug regulations, there is no evidence here that Congress was actually aware of the loophole Commisimpex now seeks to exploit. Nor has Congress acted to preempt any closely related set of state claims, as it had in that case. An inference of intent drawn from Congressional silence on this point would be unjustified.

Commisimpex also points to several non-binding cases purporting to support its theory that foreign Judgments enforcing foreign arbitral awards are not preempted by the FAA. *See* Pl.'s Mot. 13–15; Pl.'s Reply 15–18 (reviewing cases and concluding that "*every* court to have considered the issue has found that the FAA applies only to the enforcement of arbitral awards, not foreign Judgments"). However reliance on these cases is misplaced because none of these cases directly address the preemption issue raised in this case. In *Island Territory of Curacao v. Solitron Devices, Inc.*, the Second Circuit held that the FAA did not preempt the recognition of a foreign Judgment which, itself, enforced a foreign arbitral award under New York state law. 489 F.2d 1313, 1319 (2d Cir. 1973); *see also* Pl.'s Reply 15–16 (discussing the case). However, that case did not implicate § 207's timeliness requirement. Although the court noted briefly that the underlying arbitral award in that case "might not be enforceable qua award" on other grounds, the court had no occasion to address any of the Congressional purposes and objectives behind the timeliness requirement in § 207—purposes that would be frustrated by Commisimpex's maneuver in this case. *See Solitron*, 489 F.2d at 1319. Conversely, in *Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, the Second Circuit first blocked an attempt to confirm a foreign arbitral award as untimely under § 207, 989 F.2d 572, 576 (2d Cir. 1993), and then authorized the enforcement of a foreign Judgment enforcing that award, 29 F.3d 79 (2d Cir. 1994). *See also* Pl.'s Mot. 13–15

(discussing the case); Pl.'s Reply 16–18 (same).  However, while the second opinion in this case presented facts very similar to those of the present matter, the court failed to address preemption. *Seetransport*, 29 F.3d at 81–82; *see also Cont'l Transfert Technique*, 800 F. Supp. 2d at 164–65 (enforcing under the D.C. Recognition Act an English Judgment based on an arbitral award, but not addressing preemption).  Accordingly, none of these cases provides persuasive authority against preemption.

Finally, Commisimpex also points to legislative history of FAA Ch. 2.  *See* Pl.'s Reply 14–15, 19.  It points to an exchange between the Chairman of the Senate Foreign Relations Committee and Richard Kearney, Chairman of the Secretary of State's Advisory Committee on Private International Law:

> **Chairman:** Does this legislation have any effect whatever on State laws?
> **Mr. Kearney:** No, Mr. Chairman, it does not. It concerns in effect solely the jurisdiction of the Federal district courts.
> **Chairman:** And it does not alter or change a citizen's rights under State laws?
> **Mr. Kearney:** Not at all.
> **Chairman:** Does it in any way broaden Federal authority?
> **Mr. Kearney:** Not basically. It provides for the right of removal to the district court from the State court in a case that falls under the Convention, but what we are dealing with is foreign commerce which now is fully within the ambit of Federal authority.
> . . .
> **Chairman:** So there is no possible opposition based upon the idea we are now reaching out and subjecting citizens to further arbitrary intervention of the Federal authorities or any other authorities in their private affairs. That is not justified; is that correct?
> **Mr. Kearney:** That is correct.

S. Rep. No. 91–702, 91st Cong. 2d Sess at 10 (1970); *see also* Pl.'s Reply 14–15 (quoting and discussing this passage.).  Even setting aside the usual caveats about reading this type of legislative history as a reliable signal of Congressional intent, this exchange is far too general to dispute the Congressional purposes in promoting uniformity and finality evinced by the legislation as described above.  The exchange does not consider the time-limit imposed by § 207, nor does it suggest that Congress contemplated the loophole that Commisimpex now seeks to

exploit.  Mr. Kearney's statement that cases implicating "foreign commerce" are "now . . . fully within the ambit of Federal authority" actually *bolsters* the Congressional purpose in procedural uniformity, evinced by its choice to implement the New York Convention at the federal level, rather than leaving it for individual states.

Commisimpex's Complaint amounts to an attempt to circumvent the procedures Congress established for the confirmation of New York Convention awards in the FAA. Because this maneuver would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *see Arizona*, 132 S. Ct. at 2501, it violates the Supremacy Clause and is preempted.

### III.   CONCLUSION

Because the Court finds that Commisimpex's attempt to circumvent the three year limitations period in 9 U.S.C. § 207 by way of the D.C. Recognition Act is preempted, it will DENY plaintiff's motion for summary Judgment, and will further DISMISS plaintiff's Complaint with prejudice.

An Order will issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on January 8, 2013.