**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT, S.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil No. 12-743 (RCL) |
| | ) |
| THE REPUBLIC OF THE CONGO | ) |
| AND CAISSE CONGOLAISE | ) |
| D'AMORTISSEMENT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court are plaintiff Commissions Import Export, S.A.'s ("Commisimpex") motion for summary judgment and defendants the Republic of the Congo and Caisse Congolaise d'Amortissement's ("CCA") (collectively "Congo") motion for substitution pursuant to Fed. R. Civ. P. 25(c). ECF Nos. 37, 54. The Court previously denied the summary judgment motion and dismissed this case. ECF No. 43. The Court of Appeals reversed, remanding the case for further proceedings in accordance with its opinion. ECF No. 47. In light of the Court of Appeals' mandate and upon further review of the parties' briefing, the record, and the relevant legal authorities, the Court shall grant Commisimpex's motion for summary judgment and deny Congo's motion for substitution.

## I.   BACKGROUND

The factual predicate for this lawsuit was ably set forth by the Court of Appeals in its 2014 opinion and the Court incorporates it herein:

> In the 1980s, [Commisimpex] entered into contracts with the Republic of the Congo to perform public works and supply materials. The contracts were

financed through supplier credits extended by [CCA] that were formalized through promissory notes issued by CCA and guaranteed by the Republic of the Congo.  In 1992, the parties signed an agreement for the repayment over ten years in equal, consecutive monthly payments of certain outstanding debts owed to [Commisimpex] under the contracts.  Article 10 provided that any disputes arising from or relating to the agreement would be resolved by final binding arbitration under the Rules of the International Chamber of Commerce ("ICC").  CCA drew up promissory notes endorsed in favor of the Company, and in 1993 the Republic of the Congo issued a series of commitment letters; each commitment letter contained an irrevocable waiver of immunity from legal proceedings or execution and a commitment to submit all disputes to ICC arbitration in Paris, France, governed by French law.

When the Congo failed to pay the promised amounts as they came due, and did not respond to [Commisimpex's] formal demand for payment, [Commisimpex] filed a request in 1998 for arbitration with the International Court of Arbitration of the ICC and the matter was submitted to arbitration.  On December 3, 2000, the arbitral tribunal in Paris issued a final award in favor of [Commisimpex] ("the Award").  The Award included outstanding principal owed under the agreement, interest, penalty interest on various promissory notes, and costs. The Award was summarily confirmed by the Tribunal de Grande Instance of Paris on December 12, 2000, and was upheld on May 23, 2002 by the Court of Appeals of Paris after the Congo appealed to rescind the Award.  The Company filed eleven judicial enforcement proceedings to enforce the Award in France, as well as 82 non-judicial bailiff actions.

[Commisimpex] also obtained judicial recognition of the Award pursuant to the New York Convention in Belgium and Sweden, but obtained no recovery on the amounts owed. On June 17, 2009, [Commisimpex] initiated proceedings pursuant to the Convention in the Queen's Bench Division of the High Court of Justice, Commercial Court in London, England [(the "English Court")].  The [English] Court entered an order on July 10, 2009, ruling that the Award was enforceable in the same manner as a judgment under section 101 of the 1996 Arbitration Act of England, and recalculating the amount due to include additional interest and other costs ("the English Judgment").  Under English law, the judgment became final, conclusive, and enforceable on March 2, 2010, and remains enforceable for six years from that date.  The [English] Court amended the judgment on November 1, 2011 to account for [Commisimpex's] successful seizure of French Francs in partial satisfaction of the Award.

Shortly before, on September 2, 2011, [Commisimpex] filed a complaint in the federal court in the Southern District of New York to recognize and enforce the English Judgment under the New York Uniform Foreign Country Money–Judgments Recognition Act, N.Y. C.P.L.R. Article 53.  That court transferred the case to the federal court in the District of Columbia and the Company amended and supplemented its complaint to recognize and enforce the English Judgment under

[the Uniform Foreign-Country Money Judgments Recognition Act of 2011, D.C. Code § 15-361 *et seq.* (the "D.C. Recognition Act" or the "Act")].

*Commissions Import Export S.A. v. Republic of the Congo*, 757 F.3d 321, 324–25 (D.C. Cir. 2014) (internal citations omitted).

At summary judgment, this Court held that the D.C. Recognition Act was preempted by the Federal Arbitration Act's three year statute of limitations, codified at 9 U.S.C. § 207. *Commissions Import Export, S.A. v. Republic of the Congo*, 916 F. Supp. 2d 48, 57–58 (D.D.C. 2013), *rev'd*, 757 F.3d at 333.   The Court concluded that Commisimpex's suit was not timely under the FAA's statute of limitations, denied Commisimpex's motion for summary judgment, and dismissed the case.   *Id.*   The Court of Appeals reversed, holding that federal law did not preempt the D.C. Recognition Act's longer limitations period.   *Commissions Import Export*, 757 F.3d at 333.   It remanded the case with instructions for this Court to "determine whether the English Judgment is enforceable under the D.C. Recognition Act."   *Id.*

On March 31, 2015, the Court issued an order allowing the parties to submit supplemental briefing as to Commisimpex's motion for summary judgment given the substantial length of time since its filing.   ECF No. 51.   The parties submitted briefs and responses in accord with this order. ECF Nos. 52, 53, 56, 57.   As the Court stated it would do in the March 31 order, the motion was taken under advisement at the conclusion of this round of supplemental briefing.

## II.    MOTION FOR SUMMARY JUDGMENT

Commisimpex has moved for summary judgment on its claim that the English Judgment should be recognized and enforced under the D.C. Recognition Act.[1]

---

[1] The Court previously held that it has subject matter jurisdiction over this case.  *Commissions Import Export*, 916 F. Supp. 2d at 51.  The Court of Appeals affirmed.  *Commissions Import Export*, 757 F.3d at 325.

## A.       Legal Standard

### 1.       Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A motion for summary judgment is only defeated by a "genuine" dispute as to a "material" fact; the "mere existence of *some* alleged factual dispute" is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Material facts are those which could affect the outcome of a case, as determined by the substantive law underlying the suit. *Id.* at 248.  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the moving party would bear the burden of proof at trial, it "must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).  In response, the nonmoving party must present specific facts beyond mere allegations or conclusory statements, which would enable a reasonable jury to find in its favor. *Anderson*, 477 U.S. at 256.

### 2.       D.C. Recognition Act

The D.C. Recognition Act states that any foreign country judgment entitled to recognition under it is "(1) [c]onclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in the District of Columbia would be conclusive; and (2) [e]nforceable in the same manner and to the same extent as a judgment rendered in the District of Columbia." D.C. Code § 15-367.

The Act applies to a foreign country judgment if that judgment "(1) [g]rants or denies recovery of a sum of money; and (2) [u]nder the law of the foreign country where rendered, is final; conclusive; and enforceable." *Id.* § 15-363(a) (internal subdivisions omitted).  The Act does not apply, however, to judgments for taxes, fines or other penalties, divorce, support or maintenance, or other judgments rendered in connection with domestic relations.  *Id.* § 15-363(b).  The party seeking recognition of a foreign country judgment has the burden to show that the Act applies to that judgment.  *Id.* § 15-363(c).

The D.C. Recognition Act requires a court of the District of Columbia to recognize a foreign country judgment to which the Act applies, unless a statutorily defined exception covers the judgment at issue.  *Id.* § 15-364(a).  There are both mandatory and discretionary exceptions to recognition.  As to the former exceptions, the Act provides that a court may not recognize a foreign country judgment if the "[j]udgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law" or if the foreign court lacked subject matter or personal jurisdiction.  *Id.* § 15-364(b).  Of the statute's laundry list of discretionary exceptions to recognition, the only one at issue in this case is that which allows a court to decline recognition when the "[j]udgment or the cause of action on which the judgment is based is repugnant to the public policy of the District of Columbia or of the United States."  *Id.* § 15-364(c)(3).  In any event, the party objecting to the recognition of a foreign country judgment to which the Act applies bears the burden of establishing one of these mandatory or discretionary exceptions.  *Id.* § 15-364(d).

The mandatory exception to recognition for lack of personal jurisdiction is further elaborated in a subsequent section of the statute.  The statute sets out a number of conditions that, if met, conclusively establish personal jurisdiction for purposes of the Act.  *Id.* § 15-365(a).  These

bases of personal jurisdiction are not exclusive, however, and the Act states that a court may recognize other bases of personal jurisdiction that are "sufficient to support a foreign-country judgment." *Id.* § 15-365(b).

An action under the D.C. Recognition Act "must be commenced within the earlier of the time during which the foreign-country judgment is effective in the foreign country or 15 years from the date that the foreign-country judgment became effective in the foreign country." *Id.* § 15-369. There is no dispute that this action was timely under this provision.

### B.    Discussion

#### 1.    D.C. Recognition Act applies to the English Judgment

Commisimpex has satisfied its burden to show that the D.C. Recognition Act applies to the English Judgment under section 15-363. The English Judgment grants a certain sum of money. Am. Compl., Exs. B, C, ECF Nos. 35-2, 35-3. Under English law, it is final, conclusive, and enforceable. John A. Higham Decl. ¶ 13, ECF No. 37-3. Congo has raised nothing in its response to rebut that the Act applies to the English Judgment.[2]

It is worth exploring briefly one issue not briefed by the parties. The English Judgment grants "penalty interest." *See* Am. Compl., Ex. B ¶ 2(e). This portion of the judgment appears to be rooted in the 2000 Arbitration Award's grant of "lateness interest," which was provided for by the parties' 1992 agreement. *See* Am. Compl., Ex. A at 63–65, 68–69, ECF No. 35-1. Although this portion of the judgment is given the name of penalty, the Court concludes that it is not the sort of judgment for a penalty that would preclude recognition under the D.C. Recognition Act.

---

[2] Congo has not contested the currency amounts awarded in the English Judgment and so the Court generally adopts the amounts set forth in Commisimpex's proposed order attached to its motion for summary judgment. ECF No. 37-30. The Court does not however recognize the English Judgment's award of costs incurred during the proceedings before the English Court. These may not be recognized because that portion of the judgment is not for a specific sum of money. *See Sea Search Armada v. Republic of Colombia*, 821 F. Supp. 2d 268, 274–75 (D.D.C. 2011).

Persuasive authority indicates that this portion of the Act is concerned with "whether [the judgment's] purpose is remedial in nature, affording a private remedy to an injured person, or penal in nature, punishing an offense against the public justice." *See Desjardins Ducharme v. Hunnewell*, 585 N.E.2d 321, 323 (Mass. 1992) (citing *Chase Manhattan Bank, N.A. v. Hoffman*, 665 F. Supp. 73, 75–76 (D. Mass. 1987)) (interpreting a Massachusetts recognition statute similar to the Act).  The "penalty interest" granted in the English Judgment, derived from the Award, is remedial in nature because it simply awards interest on unpaid debts.  It is not designed to punish an offense against the public justice.

Because the D.C. Recognition Act applies to the English Judgment, the Court is statutorily obligated to enforce it unless one of the exceptions to recognition applies.  Congo is the party arguing against enforcement and, therefore, bears the burden of proof as to these exceptions.  Congo points to two exceptions to recognition, one mandatory and one discretionary.

### 2. The English Court had personal jurisdiction

Congo argues that the Court may not recognize the English Judgment because it was rendered by a foreign court that lacked personal jurisdiction.  Congo contends that none of the statutorily enumerated grounds requiring the Court to find a valid assertion of personal jurisdiction are satisfied.  *See* D.C. Code § 15-365(a).  Nonetheless, the Court may find that the English Court had personal jurisdiction over Congo on the basis of any other ground that is "sufficient to support a foreign-country judgment."  *Id.* § 15-365(b).

Case law is sparse in D.C. federal and local courts regarding this latter portion of the statute, which confers discretion on courts in determining whether personal jurisdiction has properly been asserted for purposes of the D.C. Recognition Act.  Decisions interpreting identical or substantially similar statutes in other jurisdictions are instructive however.  The New York Court of Appeals

holds that a reviewing court should consider "whether exercise of jurisdiction by the foreign court comports with New York's concept of personal jurisdiction, and if so, whether that foreign jurisdiction shares our notions of procedure and due process of law." *Sung Hwan Co. v. Rite Aid Corp.*, 850 N.E.2d 647, 651 (N.Y. 2006).   In carrying out these principles, New York courts typically use the state's long arm statute as a framework for determining whether the foreign assertion of personal jurisdiction comports with local requirements.  *Id.*  A federal district court in New York stated the rule somewhat more broadly, concluding that New York courts may recognize personal jurisdiction for purposes of New York's recognition act if the "foreign judgment [is] predicated on any jurisdictional basis [New York] recognizes in its internal law." *Canadian Imperial Bank of Commerce v. Saxony Carpet Co.*, 899 F. Supp. 1248, 1252–53 (S.D.N.Y. 1995) (quoting *Porisini v. Petricca*, 456 N.Y.S.2d 888, 889–90 (N.Y. App. Div. 1982)).

    The Ninth Circuit holds that a similar provision in California's recognition act requires personal jurisdiction to be recognized if the foreign judgment is "rendered in accordance with American principles of jurisdictional due process," i.e. if there are sufficient minimum contacts between the defendant and the foreign court and adequate notice is given.  *Bank of Montreal v. Kough*, 612 F.2d 467, 471 (9th Cir. 1980).  Because California's long-arm statute is co-extensive with the requirements of federal constitutional due process, *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008), it follows that the inquiry under the California and New York recognition acts is fundamentally the same: personal jurisdiction should only be accepted as validly asserted if it comports with the internal law of the state where recognition is sought and if constitutional minimums are met.

    A major wrinkle must be considered in analogizing these authorities to the D.C. Recognition Act and the facts of this case.  The Republic of the Congo and CCA are both foreign

states for purposes of the Foreign Sovereign Immunities Act ("FSIA"). *Commissions Import Export*, 916 F. Supp. 2d at 51. As a result, there are two key differences between these defendants and the parties being analyzed in the New York and California cases above. First, foreign states are not "persons" for purposes of the Due Process Clause. *Williams v. Romarm, SA*, 756 F.3d 777, 782 (D.C. Cir. 2014). Therefore, a United States court may assert personal jurisdiction over a foreign state regardless of whether doing so would comport with due process. *See id.* (holding that "minimum contacts between the foreign state and the forum state are not required for a court to constitutionally exert personal jurisdiction over the state"). Second, the FSIA is the sole ground upon which a court in the United States may assert personal jurisdiction over a foreign state. *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 426 (5th Cir. 2006). As a result, state long arm statutes are irrelevant to determining whether the assertion of personal jurisdiction over a foreign state is valid.

Turning to this case, the Court first holds that the English Court had personal jurisdiction over Congo as a matter of English law. Commisimpex has submitted argument and authorities satisfactorily demonstrating that English law permits the method of service that Commisimpex used before the English Court. Higham Decl. ¶ 12. Congo has not contested this showing.

The Court also concludes that the English Court's assertion of personal jurisdiction is valid under the D.C. Recognition Act. As set forth above, persuasive authority indicates that a court considering recognition under a statute like the Act should normally ask (1) whether the foreign court's assertion of personal jurisdiction satisfies federal constitutional due process and (2) whether the assertion of personal jurisdiction is cognizable under the state's internal law.

Here, a modification of this standard inquiry is called for. Because the exclusive basis for assertion of personal jurisdiction over a foreign sovereign in the United States is satisfaction of 28

U.S.C. § 1330(b), the Court shall evaluate the procedure used before the English Court as compared to that statute. The Court need not evaluate the English Court's assertion of personal jurisdiction according to minimum contacts due process jurisprudence or the D.C. long arm statute. Both of these authorities are irrelevant to evaluating personal jurisdiction over a foreign sovereign in the United States.

Under the FSIA, personal jurisdiction exists over a foreign state when there is subject matter jurisdiction and proper service of process under the statute. *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012); *see* 28 U.S.C. § 1330(b). As the Court has already determined, there is subject matter jurisdiction over this action to recognize the English Judgment because of Congo's waiver of sovereign immunity in the 1992 commitment letters accompanying the promissory notes that form the basis for the 2000 Arbitration Award. *See Commissions Import Export*, 916 F. Supp. 2d at 51, *aff'd as to this issue*, 757 F.3d at 325. For the same reason, a U.S. court would have subject matter jurisdiction over a suit, like that giving rise to the English Judgment, to enforce the Award itself.

Moving to the second component of personal jurisdiction under the FSIA, the service of process made at the English Court is sufficient because it is substantially similar to that prescribed by 28 U.S.C. § 1608(a)(4), both as to the types of documents served and the method of service used. Under section 1608(a)(4), a defendant must be served with "two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state." 28 U.S.C. § 1608(a)(4). These documents are to be transmitted by the Secretary of State "through diplomatic channels to the foreign state." *Id.*

Commisimpex served the following documents: "the Claim Form, First Witness Statement of Michael Aughey Polkinghorne (with accompanying exhibits), First Witness Statement of

Christophe Seraglini (with accompanying exhibits), the Judgment, and translations into French of the foregoing documents to the extent that the originals were not themselves written in French."[3] Higham Decl. ¶ 10.  These documents were then served through diplomatic channels.  Specifically, the British Embassy in Kinshasa, Democratic Republic of the Congo delivered the documents to the Ministry of Foreign Affairs and Cooperation of the Government of the Republic of Congo in Brazzaville, Congo on February 4, 2010.  Higham Decl. ¶ 11.  Service was confirmed by a letter from the British Foreign and Commonwealth Office on May 19, 2010.  *Id.*

These actions are substantially similar to the procedure laid out by section 1608(a)(4). Although the documents served and the method used were not entirely identical to the procedures specified by the FSIA, a court should not conclude that a foreign judgment is unenforceable on the basis of "mere divergence from American procedure."  *Cf. Canadian Imperial Bank*, 899 F. Supp. at 1252.

Commisimpex's substantial compliance with the FSIA's personal jurisdiction standards demonstrates that the English Court's assertion of personal jurisdiction is rooted in a basis sufficient to support recognition of a foreign country judgment.  The Court concludes that Congo has failed to demonstrate that the English Judgment should not be recognized for lack of personal jurisdiction.

### 3.    Recognition is not repugnant to public policy

Congo also argues that the Court may—and should—decline to recognize the English Judgment because it is repugnant to the public policy of the District of Columbia.  *See* D.C. Code § 15-364(c)(3).  Congo invokes a recent D.C. Court of Appeals case for the proposition that it is

---

[3] The Court takes judicial notice of the fact that Congo's official language is French.  *See* The World Factbook: Republic of the Congo, Central Intelligence Agency, https://www.cia.gov/library/publications/the-world-factbook/geos/cf.html (last visited July 28, 2015).

contrary to D.C. public policy to enforce a foreign judgment that itself enforces a foreign arbitral award. *See Ahmad Hamad Al Gosaibi & Bros. Co. v. Standard Chartered Bank*, 98 A.3d 998 (D.C. 2014). Presumably, Congo sees this public policy exception as partly rooted in the fact that the 2000 Arbitration Award cannot itself be enforced in the United States because it is time barred under the FAA. *See Commissions Import Export*, 916 F. Supp. 2d at 50. At various points in its briefing, Congo refers to this maneuver of seeking recognition of a judgment that itself recognizes an arbitration award as "laundering" the underlying award. *E.g.*, Defs.' Supplemental Mem. of Law at 8, ECF No. 52.

Congo's argument fails because *Ahmad* does not provide support for the claimed public policy. Thus, Congo has failed to satisfy its burden of demonstrating that the public policy exception applies.

In *Ahmad*, the D.C. Court of Appeals considered whether the Uniform Enforcement of Foreign Judgments Act ("UEFJA") provided a basis for enforcing a New York judgment that enforced a judgment from Bahrain. *Ahmad*, 98 A.3d at 1002. The court held that it did not. *Id.* at 1008.

The UEFJA, as enacted in D.C., "provides for the streamlined registration of 'any judgment . . . that is entitled to full faith and credit.'" *Id.* at 1001 (quoting D.C. Code § 15-351) (alteration in original). More than simply streamlining the process, however, the UEFJA "makes the District's recognition of such judgments essentially automatic, as they may be registered 'in the Office of the Clerk of the Superior Court' without the involvement of a judge and without prior notice to other interested parties." *Id.* (quoting D.C. Code §§ 15-352–353). The *Ahmad* court contrasted this scheme with the D.C. Recognition Act, which requires that a judge "substantively review[] the foreign country judgment." *Id.*

The court concluded that the New York judgment could not be enforced pursuant to the UEFJA because it was not a judgment to which the statute applied. *Id.* at 1008. The court took a "look behind the judgment issued by New York" and determined that it was "[i]n reality . . . a foreign country judgment." *Id.* at 1007–08. Thus, the UEFJA did not apply because the New York judgment was not entitled to full faith and credit. *See id.* at 1008.

This Court concludes that the D.C. Court of Appeals was not stating a D.C. public policy against recognizing judgments that recognize foreign arbitral awards. Instead, it was merely interpreting the UEFJA and deciding what types of judgments are covered by that statute. Put another way, the *Ahmad* court decided, in a particular case, what the UEFJA means when it states that it applies to any judgment "that is entitled to full faith and credit." *See id.* at 1001, 1008. Such a determination did not involve holding that D.C. has a public policy against the type of judgment at issue in this case.

This latter point is made clear by the *Ahmad* court's emphasis on the distinction between the "essentially automatic" recognition of judgments under the UEFJA and the "substantive[]" review" that is required by the D.C. Recognition Act. *Id.* at 1001. Along this line, the court noted in dicta that its holding did not preclude seeking recognition for the same Bahraini judgment under the D.C. Recognition Act. *Id.* at 1008. This observation aligns with the fact that the Act has a specific and separate definition of the types of judgments to which it applies, one that was not explored by the *Ahmad* court.

Furthermore, it appears that D.C. public policy would favor or at least stand neutral as to the maneuver executed here. The D.C. Court of Appeals holds that D.C. has a strong public policy in favor of arbitration, one that is identical to that expressed in federal law. *See Masurovsky v. Green*, 687 A.2d 198, 201 (D.C. 1996). Although the Court is not aware of a D.C. court

13

confronting this precise issue, the D.C. Circuit held on prior appeal in this case that the federal policy favoring the enforcement of valid arbitral awards "is not undermined—and frequently will be advanced—through recourse to parallel enforcement mechanisms that exist independently of the FAA." *Commissions Import Export*, 757 F.3d at 330.  The D.C. Recognition Act is just such a parallel enforcement mechanism.  The Court concludes that a D.C. court would make the same determination, given the identical policy in D.C. law favoring arbitration.  At a minimum, nothing in D.C. statutory or case law indicates that the high burden for a public policy based argument against enforcement is met here.  *Cf. TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007) (holding that the public policy exception to enforcement of arbitration awards under the New York Convention is "infrequently met" and only satisfied by a showing that the award is "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought") (internal citation and quotation marks omitted).

The Court concludes that Congo has failed to demonstrate the existence of a public policy rationale for rejecting the English Judgment.

### 4.    Prejudgment interest

Commisimpex also seeks prejudgment interest on the English Judgment.  It argues that it is entitled to prejudgment interest under D.C. Code § 15-108.

Section 15-108 states that prejudgment interest is mandatory in an action "to recover a liquidated debt on which interest is payable by contract or by law or usage."  Commisimpex invokes this provision on the ground that it is entitled to interest under the 1992 agreement with Congo that underlies the 2000 Arbitration Award.  This argument is inapposite, however, because this action is not one to recover on the 1992 agreement.  It is an action to recognize the English

Judgment.  The fact that the 1992 agreement underlies the English Judgment does not make this an action to recover on that agreement.

Commisimpex has also made some reference to its entitlement to section 15-108 interest based on post-judgment interest arising out of the English Judgment.  It has not submitted any argument or authorities indicating that such an entitlement to post-judgment interest exists or how much that amount would be under English law.  This failure is fatal to Commisimpex's argument for section 15-108 interest, regardless of its validity as a matter of D.C. law.  *See Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 105 (D.D.C. 2014) ("While the Court is authorized to conduct independent research into foreign law, if the parties fail to provide an adequate statement of the law, the court is not obligated to independently remedy the deficiency.") (internal citation and quotation marks omitted).

Commisimpex also makes general claims that it is entitled to an award of prejudgment interest on an equitable basis.  It has failed however to sufficiently brief the basis for such an equitable award or the amount of interest it believes should be applied.  In the absence of such argument, the Court shall deny the request for prejudgment interest.

## III.    MOTION FOR SUBSTITUTION

Congo has moved to substitute liquidation trustees appointed by a Congolese court for Commisimpex pursuant to Federal Rule of Civil Procedure 25(c).  ECF No. 54.  Commisimpex opposes the motion, primarily on the ground that the liquidation order was procured in fraudulent proceedings.

### A.    Background

Congo's motion arises out of an order to liquidate Commisimpex, handed down by the Commercial Court of Brazzaville on October 30, 2012.  Gaston Mossa Decl. ¶ 2, ECF No. 54-7.

The court ordered Commisimpex's liquidation to satisfy unpaid social security contributions owed to the Caisse Nationale de Securite Sociale, i.e. the National Social Security Fund of the Republic of the Congo ("CNSS").  Robert Schwinger Decl., Ex. 6 at 3–4 of translation, ECF No. 54-8.  The court appointed three liquidation trustees and held that "the acts, rights and actions of Commisimpex S.A. shall be done or exercised, for the duration of the liquidation of assets by the trustee acting alone in representing Commisimpex."  *Id.* at 26 of translation.

The Court of Appeal of Brazzaville affirmed on May 13, 2013.  Mossa Decl. ¶ 5.  A further appeal was taken to the Common Court of Justice and Arbitration of the Organization for the Harmonization of Business Law in Africa.  Marc Suskin Decl. ¶ 10, ECF No. 54-3.  That court affirmed on January 14, 2015.  Schwinger Decl., Ex. 9 at 6 of translation, ECF No. 54-11.

**B.      Discussion**

Under Rule 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  In accord with the plain language of the rule, Rule 25(c) is wholly permissive and does not require transferees to be substituted.  *FDIC v. SLE, Inc.*, 722 F.3d 264, 268 (5th Cir. 2013).  As a result, the decision to grant or deny a Rule 25(c) motion is a matter within the district court's discretion.  *Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 482 (D.C. Cir. 1996).

The primary basis for deciding the motion is whether substitution would "facilitate the conduct of the litigation."  *Citibank v. Grupo Cupey, Inc.*, 382 F.3d 29, 32 (1st Cir. 2004); *see also* 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1958 (3d ed. 2007).  This criterion, rooted in considerations of convenience and economy, prevails because Rule 25(c) has no bearing on the substantive relationship between the parties.  It "expressly permits parties to

continue in an action, even if they do not remain the real party in interest, as long as the cause of action *itself* survives the transfer to the new party." *ELCA Enters., Inc. v. Sisco Equipment Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995) (emphasis in original).[4]

The Court concludes that Rule 25(c) substitution is unnecessary in this case. The Order and Judgment that shall issue along with this Memorandum Opinion brings this litigation to a close. Thus, the Court fails to see how substitution would facilitate the conduct of this litigation. In light of this circumstance and the provision that a Rule 25(c) substitution has no bearing on the substantive rights of the parties, there is no reason to grant Congo's motion for substitution.

In the alternative, the Court also concludes that the motion should be denied because to grant it would necessarily require the Court to recognize the legitimacy of the liquidation order entered against Commisimpex.

In general, a federal court's recognition of a judgment rendered in a foreign country is a matter of comity. *See Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895). A court should accord deference to such a judgment so long as

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect . . . .

---

[4] Although the survival of a corporation's causes of action after dissolution is a matter for the law of the state of incorporation, Congo has not argued that Commisimpex's claim was extinguished by the liquidation order. *See* 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1958 (3d ed. 2007) ("If the substantive law allows the action to continue against the dissolved corporation or against those to whom its assets have been transferred, Rule 25(c) becomes applicable."). Therefore, the Court has not considered the issue.

*de Csepel v. Republic of Hungary*, 714 F.3d 591, 606 (D.C. Cir. 2013) (quoting *Hilton*, 159 U.S. at 202–03).  The party seeking recognition of a foreign judgment bears the burden of proof.  *Id.* at 607.

The Court concludes that Congo has failed to demonstrate that the liquidation order rendered against Commisimpex should be afforded comity.  As Commisimpex has persuasively shown, the judgment was not the product of a "full and fair trial," but instead appears to have arisen from fundamentally unfair proceedings that were not likely to "secure an impartial administration of justice."  The Court is particularly troubled by the fact that the liquidation order was supported by nothing more than a document, signed by a manager of the CNSS, alleging the existence of the debt.  *See* Francis A. Vasquez, Jr. Decl., Ex. 2, ECF No 58-3; Mohsen Hojeij Decl. ¶ 5, ECF No. 58-2.  That the order was supported by such meager proof is especially problematic when one compares CNSS' document with the extensive evidence submitted by Commisimpex in contesting CNSS' claim, much of which calls into serious question the accuracy of the claim. Hojeij Decl. ¶¶ 7–8.

Additionally, the timing of the proceedings is suspicious to say the least, given that the debts, allegedly accrued many years prior, were only sought at a time when Commisimpex and Congo were in the middle of arbitration proceedings before the International Court of Arbitration of the ICC.  Michael A. Polkinghorne Second Decl. ¶¶ 3, 5, ECF No. 58-12.  Furthermore, the speed with which the proceedings at the trial court were conducted indicates that it is highly unlikely that Commisimpex received a fair and impartial administration of justice.  At every step, the suit appears to have proceeded with extraordinary haste.  For example, although it was later delayed briefly, the trial court scheduled a hearing to decide the merits of the case just 6 days after

18

the initial claim was filed.   Polkinghorne Second Decl. ¶ 6.   The trial court's judgment was rendered just 34 days after the initial claim was filed.  Hojeij Decl. ¶¶ 4, 10.

For these reasons, the Court declines to recognize the liquidation order that would give authority to the proposed substitute plaintiffs.  This constitutes an independent, alternative basis to deny the motion for substitution.  It is axiomatic that a motion for substitution because of a transfer of interest may only be granted if an interest has, in fact, been validly transferred.

## IV.   CONCLUSION

For the reasons stated above, the Court concludes that Commisimpex's motion for summary judgment shall be granted and Congo's motion for substitution shall be denied.  An Order and Judgment consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on July 30, 2015.